866 A.2d 329

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**David Joseph DiNICOLA, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 9, 2003.

Decided Jan. 19, 2005.

Paula C. DiGiacomo, for the Com. of PA, appellant.

J. Wesley Rowden, Meadville, for David Joseph DiNicola, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Chief Justice CAPPY.

This appeal presents the question of whether Appellee's Fifth Amendment privilege against self-incrimination was violated by reference to his pre-arrest silence. This question is brought before our court by Appellant who challenges the determination that trial counsel was ineffective. Because we find no violation of Appellee's Fifth Amendment privilege, the

attendant finding of ineffective assistance of trial counsel was in error. Therefore, for the reasons stated below, we reverse the order of the Superior Court awarding a new trial and reinstate the judgment of sentence.

Appellee was convicted of aggravated indecent assault and related offenses, arising from his interaction with fourteen year old K.H., a resident at a youth placement facility where Appellee was employed as a staff member. Several weeks after Appellee's unrelated, voluntary departure from his employment at the facility, K.H. confided to a staff member that Appellee touched her in an inappropriate, sexual manner. K.H. asked that her disclosure be kept in confidence. Against K.H.'s wishes, the staff member reported the disclosure, and an investigation ensued, first by facility staff and later by the Pennsylvania State Police.

The investigating trooper initially spoke with the facility supervisor and interviewed K.H., who confirmed her prior disclosure. The trooper also interviewed staff members who worked with Appellee and, to varying degrees, corroborated that Appellee had maintained a close relationship with K.H.

The trooper telephoned Appellee to request an interview, indicating that allegations had been made against him relating to his employment at the facility, but would not discuss details over the phone. Appellee declined to meet with the trooper, expressing a desire to consult his attorney. Later, the attorney contacted the trooper and stated that Appellee adamantly denied any inappropriate conduct, but, on the advice of counsel, would assert his right under the Fifth Amendment to the United States Constitution to remain silent at any interview with police.

Appellee was subsequently arrested and charged with offenses ranging from aggravated indecent assault of a person less than sixteen years old to corruption of a minor.

At the ensuing jury trial, after presenting testimony from K.H. and other witnesses, the Commonwealth called upon the arresting trooper solely to establish Appellee's age at the time of his offenses. On cross-examination, Appellee's trial counsel

attempted to proceed beyond the scope of the direct examination but was precluded from doing so. After the Commonwealth rested, however, trial counsel called the trooper as a defense witness. On the Commonwealth's request for an offer of proof, counsel for Appellee summarized his reason for calling the trooper by stating that he wished to question the trooper "to determine the adequacy of the Pennsylvania State Police investigation against my client, Dave DiNicola. I don't think they put on an adequate investigation. These questions are directly proposed to be present [sic] to show the jury and I think I should be entitled to let them know this." (T.T. p. 16).

The direct examination of the trooper followed. During that examination, the Commonwealth objected and raised the concern that the line of questions would lead to the trooper revealing Appellee's pre-arrest assertion of silence. (T.T. p. 29) When presented with this concern at sidebar, trial counsel responded: "All I asked if he investigated anything that's inconsistent with his theory of guilt on this case. I think it's very clear cut." (T.T. p. 30).[1]

After being permitted to proceed, trial counsel asked the trooper a series of leading questions implying that his investigative efforts were minimal and/or one-sided. *See, e.g.,* N.T., Nov. 18, 1998, at 29 ("In fact nothing here—nothing whatsoever was investigated that might be inconsistent with your theory that Dave DiNicola is guilty here; right? Was anything else investigated that might tend to show otherwise? Anything?"). On the Commonwealth's objection, another sidebar discussion ensued, during which the district attorney

1. As the trial court noted in its initial opinion regarding this exchange, defense counsel was looking for a response from the trooper as to information the trooper uncovered that would be either consistent or inconsistent with the trooper's conclusion that Appellee was guilty. Appellee's silence was not relevant and would not have been a proper response to that question. (Trial court slip opinion of 6/29/99, p. 3). The Superior Court in its initial decision in this case reviewed this particular exchange and concluded that "[i]t is clear from the notes of testimony that trial counsel was trying to elicit evidence from the trooper that may have been favorable to DiNicola." *Commonwealth v. DiNicola,* 751 A.2d 197, 200 (Pa.Super.2000).

advised that such questioning would open the door to the trooper elaborating on his unsuccessful effort to interview Appellee in furtherance of the investigation. The trial court attempted to discourage trial counsel from proceeding on his intended course, suggesting that the central issue before the jury was credibility and that aggressive questioning of the trooper might not resonate with the jury, particularly as trial counsel was unable to offer any evidence that the officer should have uncovered. The court nevertheless overruled the Commonwealth's objection, and trial counsel reiterated: "Now, was anything done by you—anything—did you look in any other direction to see if these charges were unfounded?" The officer responded that he contacted Appellee, at which point trial counsel interrupted him, shifting the focus away from Appellee's response to the trooper's inquiry.

On cross-examination, however, the district attorney returned to the subject of the trooper's conversation with Appellee, eliciting the trooper's explanation that Appellee declined the request for an interview, and that counsel for Appellee later contacted the trooper and advised that Appellee denied the allegations but would invoke his right to remain silent in any discussion with law enforcement personnel.

The remainder of the defense case consisted of Appellee's testimony, in which he refuted the Commonwealth's allegations of criminal conduct, and of evidence from numerous character witnesses. The jury convicted Appellee of all counts, and the court imposed a sentence of incarceration for eleven and one-half to twenty-four months, with a subsequent term of probation.

Armed with new counsel, Appellee filed a post-sentence motion alleging ineffectiveness of trial counsel. It was asserted that trial counsel was ineffective, first, for failing to object to the trooper's testimony revealing Appellee's pre-arrest silence; and second, for opening the door to the inevitable revelation that Appellee asserted his right to remain silent. A hearing on the matter was scheduled; however, the original record presented to this court, contains no transcript of an

evidentiary hearing at this stage or any other reference that would indicate whether or not it was actually conducted.[2]

The common pleas court did not separately assess the allegations of ineffectiveness; rather, it reached a global conclusion that there was no merit to the allegations of ineffectiveness and denied relief. The trial court's decision rested on its determination that Appellee's response to the trooper's request for an interview was better characterized as a denial of the charges rather than as silence capable of being viewed by jurors as a tacit admission. Further, the court noted that while there is a strong proscription against references to a defendant's post-arrest silence in circumstances in which the defendant elects not to testify at trial, *see, e.g., Commonwealth v. Clark,* 533 Pa. 579, 626 A.2d 154, 158 (1993), a defendant's pre-arrest silence is more amenable to being offered into evidence, at least where the defendant elects to testify, as occurred in this case. *See Commonwealth v. Bolus,* 545 Pa. 103, 680 A.2d 839, 844 (1996) ("[W]hen a criminal defendant waives his right to remain silent and testifies at his own trial, neither the United States nor the Pennsylvania Constitution prohibit a prosecutor from impeaching a defendant's credibility by referring to his pre-arrest silence."). The court concluded:

> Therefore because the defendant was never directly confronted with an accusation of criminal misconduct to which he remained silent but rather was simply asked for an appointment for an interview and because pre-arrest silence is admissible under certain circumstances, the defendant has failed to satisfy the first prong of the ineffectiveness test, i.e. that the claim has arguable merit.

On appeal, however, a three-judge panel of the Superior Court disagreed. *See Commonwealth v. DiNicola,* 751 A.2d 197 (Pa.Super.2000) ("*DiNicola I*"). The court in *DiNicola I* focused on trial counsel's failure to object. Reasoning that the inquiry into the scope of the investigation represented an attempt to obtain evidence that might have established Appel-

---

**2.** The Commonwealth notes in its brief that a hearing occurred; however, it does not discuss its scope and/or content.

lee's innocence and did not, in and of itself, reveal that Appellee had asserted his right to remain silent, the panel found a reasonable basis for counsel's initial questioning of the trooper. *See id.* at 200. It was the elicitation by the prosecution of Appellee's pre-arrest silence through cross-examination that caused the panel concern. Proceeding from that point, with the erroneous belief that Appellee had not testified at his trial, the panel found merit in the claim that trial counsel was ineffective in failing to object to the salient cross-examination. *See id.* at 202. Furthermore, the panel stated, in a conclusory fashion, that the prejudice resulting from reference to Appellee's silence was substantial. *See id.* at 202. However, the court deemed the record inadequate to assess whether counsel had a reasonable basis for failing to object. *See id.* Accordingly, the panel remanded for an evidentiary hearing limited to this question.

At the subsequent hearing before the common pleas court, trial counsel confirmed what he had stated at trial, that his questioning was designed to expose inadequacies in the criminal investigation into Appellee's conduct. Counsel gave inconsistent explanations regarding his failure to object to the relevant cross-examination of the trooper. On the one hand, counsel stated that he felt that an objection could have harmed the defense, particularly in light of his having asked similar questions. *See, e.g.,* N.T., Oct. 23, 2000, at 20–21. On the other hand, counsel later conceded that he should have asserted an objection and that he could not recall having made any evaluative decision concerning whether or not to do so during the relevant inquiries. *See id.* at 30–31.

On remand, the common pleas court read *DiNicola I* as establishing a bright-line rule to the effect that a defendant's pre-arrest silence may not be admitted into evidence. Further, the court, in considering trial counsel's inconsistent responses regarding his failure to object to the elicitation of references to Appellee's pre-arrest silence, ultimately concluded that counsel lacked any reasonable basis designed to effectuate Appellee's interests. Accordingly, as the Superior Court had already determined the arguable merit and prejudice

prongs of the ineffectiveness equation were present in this case, the trial court determined that all three prongs of the ineffectiveness inquiry had been met and that, thus, it was compelled to award Appellee a new trial.

The Commonwealth then appealed. A divided, *en banc* panel of the Superior Court affirmed. *See Commonwealth v. DiNicola*, 797 A.2d 966 (Pa.Super.2002) (*"DiNicola II"*). At the outset, the majority acknowledged that the decision to remand in *DiNicola I* was based in part on the panel's incorrect understanding that Appellee did not testify at trial and, therefore, had not waived his Fifth Amendment right to remain silent. *See id.* at 968. The majority concluded, however, that the prior panel's misapprehension of the record did not invalidate the trial court's conclusion on remand that trial counsel rendered ineffective assistance, since, regardless of whether Appellee testified, his attorney should have objected to the Commonwealth's inquiries that elicited testimony concerning his pre-arrest silence. The majority stated that references to pre-arrest silence are permissible only if used for impeachment. *Id.* at 971. Since the prosecutor's reference to Appellee's pre-arrest silence was not related to Appellee's credibility, but rather, concerned with whether the trooper conducted a proper investigation, the majority again concluded that Appellee's ineffectiveness claim was of arguable merit. *See id.*

Regarding the reasonable basis prong of the ineffectiveness inquiry, the majority endorsed the trial court's holding based on its findings that counsel did not expect that his original question would reveal the pre-arrest silence, had no reason for failing to object to the prosecution's question and, concededly should have objected earlier. *See id.* at 972. Therefore, the court concluded that trial counsel lacked a reasonable basis for failing to challenge the relevant cross-examination. *See id.*

As to the prejudice prong, the majority rejected the Commonwealth's argument that based on the overwhelming evidence; Appellee would necessarily have been convicted even without the reference to pre-arrest silence. The court noted that the central evidence presented at trial concerning actual

criminal conduct on Appellee's part was sharply conflicting, and the jury's resolution was necessarily grounded in credibility determinations. *See DiNicola II,* 797 A.2d at 972. Accordingly, the majority reiterated the previous panel's conclusion that the prejudice resulting from the reference to pre-arrest silence was substantial. *See id.*

Having twice traveled through the Superior Court, allocatur was granted so this Court could consider whether Appellee's Fifth Amendment privilege against self-incrimination was violated by reference to his pre-arrest silence. As stated earlier, this case involves two distinct questions of ineffectiveness of trial counsel. The first question focuses on the failure of counsel to object when the investigating state trooper testified that, pre-arrest, Appellee had asserted his right to remain silent. The second question of ineffectiveness concerns the stewardship of counsel in opening the door that led to the trooper's reference to Appellee's pre-arrest silence.

A claim of ineffectiveness of counsel is evaluated by the oft-stated three-prong test articulated in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987): 1) an analysis of the underlying claim of error for arguable merit; 2) application of the "reasonable basis" test to determine if the course chosen by counsel was designed to effectuate his client's interests; and 3) a determination of whether the accused has demonstrated prejudice. It is not essential to apply the test in any given order, and if the proponent of ineffectiveness fails to satisfy any one prong of the test, the entire claim fails. *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 357 (1995).

We begin our analysis of the first ineffectiveness claim, the failure of trial counsel to object to the reference to pre-arrest silence, with a brief overview of the relevant facets of the United States Supreme Court's jurisprudence on silence.[3] In its seminal decision in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Court held that where

3. The parties to this appeal have not discussed the case in terms that would justify separate consideration of the substantive issues with reference to the Pennsylvania Constitution.

the defendant does not testify at trial, the Fifth Amendment precludes the government from using a defendant's post-arrest silence as substantive evidence of consciousness of guilt. Following *Griffin*, in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Court invoked the Due Process Clause of the Fourteenth Amendment to extend the prohibition against prosecution use of post-*Miranda*[4] silence, to impeachment. In *Doyle*, the defendant was provided *Miranda* warnings at arrest and, pursuant thereto, exercised his right to remain silent. At trial, when the defendant offered an explanation for his actions on the night in question, the prosecution attempted to impeach the defendant with the fact of his post-arrest silence. Characterizing silence in the wake of warnings of the right to remain silent as "insolubly ambiguous," the Court held that it would be fundamentally unfair to provide *Miranda* warnings impliedly assuring the accused that silence carries no penalty and then to allow the prosecution to impeach a defendant with the fact of post-arrest silence. *see id.* at 617–18, 96 S.Ct. 2240.[5] However, the Supreme Court also has determined that neither the Fifth Amendment nor due process forecloses prosecution use of a defendant's pre-arrest, pre-*Miranda* silence for purposes of impeachment where the defendant elects to testify at trial. *See Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *accord Bolus*, 680 A.2d at 844.

More directly pertinent to the present case, the United States Supreme Court also has recognized that a defendant's silence may bear relevance to, and be admissible to establish, other issues arising in a criminal proceeding. For example, in *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Court ruled there is no Fifth Amendment proscription precluding the raising of silence in fair response to defense argumentation. The case concerned a

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. *Cf. Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (holding that due process does not preclude cross-examination of an accused as to his post-arrest silence in the absence of *Miranda* warnings or similar assurances).

challenge to a prosecutor's reference to the defendant's silence at trial in response to defense arguments that the government had not allowed the defendant to explain his side of the story. Specifically, during his summation, the prosecutor informed the jury that the defendant "could have taken the stand and explained it to you." *Id.* at 26, 108 S.Ct. 864. *Robinson* first noted that "the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his conduct." *Id.* at 28, 108 S.Ct. 864. The Court recognized *Griffin's* proscription against a prosecutor, on his own initiative, inviting the jury to draw an adverse inference from silence, but distinguished *Griffin* as follows:

> It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

*Robinson,* at 33–34, 108 S.Ct. 864. (citations omitted).

■ By applying *Robinson's* fair response doctrine, *see, e.g., Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 251 (1998), our court implicitly rejected the *DiNicola I* court's conclusion that impeachment is the sole permissible purpose for which a defendant's pre-arrest silence may be referenced by the Commonwealth in a criminal trial. For purposes of fair response, admissibility is presently subject primarily to the trial court's assessment of probative value versus prejudicial effect on appropriate objection, as is the case with all other evidence adduced at trial. *See* Pa.R.E. 403.[6]

6. Further, we read *Bolus* as directed to the facts before the Court (the permissibility of the Commonwealth's use of pre-arrest silence in im-

Here, as in *Robinson*, trial counsel's strategy was to question the government's preparation of its case, particularly in terms of the investigating trooper's pursuit of potentially exculpatory evidence. Since the trooper's investigation was obviously limited by Appellee's decision to reject the request for an interview, we find that the Commonwealth's elicitation of the trooper's testimony regarding this fact constituted fair response, in the same manner as did the prosecution's reference to the defendant's post-arrest silence in *Robinson*. As this line of questioning did not violate the Fifth Amendment, trial counsel will not be deemed ineffective for failure to raise an objection. Therefore, it was error to award relief on the first portion of the ineffectiveness claim.[7]

The resolution of the second portion of the ineffectiveness argument raises different concerns. Here, the claim of error is that trial counsel opened the door to the inevitable revelation that Appellee had asserted his Fifth Amendment right to remain silent.

Despite our decision that the trooper's reference to silence in the circumstances of this case did not violate the Fifth Amendment, consideration of the distinct allegation that trial counsel erred in opening the door for the trooper's testimony is not foreclosed. Nonetheless, this claim of ineffectiveness can be definitively resolved by going directly to a consideration of prejudice. *Travaglia*, 661 A.2d at 357. We must, therefore, determine if Appellee met his burden of demonstrating a reasonable probability that but for counsel's action, the result of the proceedings would have been different.

peachment), *see Bolus*, 680 A.2d at 844, but not, as Appellee would have it, as foreclosing references to pre-arrest silence in other circumstances in which they may be relevant.

7. We note that Appellee claims that the Commonwealth waived the opportunity to challenge the findings of arguable merit and prejudice on this claim by its failure to appeal the decision in *DiNicola I*. We reject this argument. When the Superior Court revisited this issue and corrected its erroneous assumptions in this case through its decision in *DiNicola II*, the slate was wiped clean; thus, waiver is inapplicable in this situation.

Appellee asserts prejudice by this revelation as the invocation of silence in the face of an accusation of criminal activity could be read as a tacit admission of guilt. *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537, 539 (1982). Appellee asserts that the prejudice he suffered by this admission outweighed any potential benefit derived from pursuing this strategy.

■ As explained herein, the mere revelation of silence does not establish innate prejudice. *See also Commonwealth v. Whitney,* 550 Pa. 618, 708 A.2d 471, 478 (1998) ("Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt").[8]

■ Taken at face value, the revelation of silence in this case was limited to its context. The trooper revealed the exchange with Appellee wherein a denial of wrongdoing was immediate, and the decision to engage in further discussion with the trooper was declined. In this situation, the reference to silence and its Fifth Amendment source was circumspect; it was not used in any fashion that was likely to burden Appellee's Fifth Amendment right or to create an inference of an admission of guilt.

Reviewing the record as a whole, we are compelled to conclude that Appellee has failed to establish that the outcome of this case would have been different absent the decision of trial counsel that opened the door to this testimony. Thus, Appellee was not entitled to relief on the second claim of ineffectiveness.

8. The elusive nature of silence was a topic eloquently discussed by the late Justice Michael Musmanno in *Commonwealth v. Dravecz,* 424 Pa. 582, 227 A.2d 904, 907 (1967), wherein this court rejected the tacit admission rule:

It may be desirable and dramatic for the wrongly accused person to shout: "I am innocent!" but not everybody responds spontaneously to stimuli. The accusation may be so startling that the accused is benumbed into speechlessness. There are persons so sensitive and hurt so easily, that they swallow their tongue in the face of overwhelming injustice.

The order of the Superior Court is reversed, and Appellee's judgment of sentence is reinstated.

Former Justice LAMB did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice NEWMAN files a concurring and dissenting opinion.

Justice CASTILLE concurring.

I join the Majority Opinion in its entirety. I agree that appellee failed to overcome the presumption of counsel effectiveness and that the courts below erred in finding that he proved the merit in his claim. I write separately to further address the governing law on trial references to a defendant's silence as well as the proper standard for assessing claims of counsel ineffectiveness in such instances.

Counsel's course of action in this case obviously opened the door to proper responsive testimony concerning Trooper Fetzner's pre-arrest interaction with appellee and his counsel. But, that testimony was not offered in order to allow the prosecution to argue that appellee had remained silent in the face of an accusation or that the jury should view his silence as incriminating. Rather, the testimony was elicited for the distinct and narrow purpose of rebutting defense counsel's suggestion to the jury that the trooper had automatically credited the victim's accusation and focused exclusively upon appellee as the perpetrator, without conducting a complete investigation—a not unheard of, and a potentially successful defense which appellate courts do not encounter often, since acquittals are not appealable.

A consideration of the purpose for which evidence is offered is essential to evaluating its propriety; thus, evidence which might be prohibited if introduced for one purpose may be relevant and admissible when introduced for another. *See, e.g., Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1152 (2000). The mere fact that evidence reveals that a defendant

decided not to speak with police during an investigation does not mean that the evidence is being proffered to burden, or ineluctably acts to burden, the right against self-incrimination enshrined in the Constitution; or the prophylactic *Miranda*[1] right to silence in the post-custody but pre-trial stage; or even, as is advanced here, some yet-to-be-recognized constitutional right to be silent in all of one's interactions with the police, so that reference to that silence can never be made.[2]

In this case, the Commonwealth did not argue that the trooper's testimony and appellee's decision to decline the trooper's interview request should be deemed a tacit admission of guilt to an accusation the trooper had yet to make. Nor did the Commonwealth proffer the evidence for some other reason which would burden the exercise of the constitutional right to remain silent. Rather, as the Majority correctly notes, the Commonwealth introduced and employed the evidence for the distinct and sole purpose of rebutting the suggestion that the trooper's investigation was biased and incomplete. The prosecutor never argued to the jury that appellee's response to the request for an interview tacitly suggested his guilt; nor did the trial court charge the jurors that they could consider the evidence for such a purpose. In short, nothing in the introduction or use of the disputed evidence in this case triggers the constitutional concerns which have led to the prohibition of those references to pre-trial silence which impermissibly burden the exercise of one's con-

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Neither this Court nor the U.S. Supreme Court has recognized a protected constitutional interest in the decision to remain silent in a pre-arrest, pre-*Miranda* situation. The U.S. Supreme Court has determined only that comment at trial on post-arrest, post-*Miranda* silence may violate due process. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (use at trial of post-arrest, post-*Miranda* silence as evidence of defendant's sanity violated due process). Both this Court and the U.S. Supreme Court have determined that there is no violation of due process when pre-arrest, pre-*Miranda* silence is used at trial to impeach the defendant's testimony. *See Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Commonwealth v. Bolus*, 545 Pa. 103, 680 A.2d 839 (1996).

stitutional right to remain silent.[3]  As this Court noted in its unanimous opinion in *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 478 (1998): "Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt."  Thus, in my view, the notion that counsel was ineffective because he opened the door to constitutionally suspect evidence of his clients pre-arrest silence lacks arguable merit.

Of course, the fact that references to pre-arrest silence are not prohibited by the Constitution does not automatically render it reasonable for counsel to open the door to evidence of such silence.  There are more dangers at trial than constitutional ones.  However, it is apparent that the responsive evidence counsel invited here was not prejudicial.  In addition to the fact that this evidence concerned the pre-arrest phase and was not introduced for the purpose of burdening appellee's right to remain silent, the evidence in fact did not establish a tacit admission, nor did it otherwise trigger the constitutional concerns which powered the change in the law represented by *Doyle*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, and its progeny.  Appellee did not respond to the trooper's interview request with stony silence, giving rise to an inference of guilt.  Instead, he advised the trooper that he wished to consult with a lawyer before speaking with him.  Appellee's lawyer consequently contacted police and relayed "that he had spoke[n] with [appellee] regarding these allegations, and that he [appellee] adamantly denied that they had occurred."  Counsel also advised that he (not appellee) saw no point in his client giving police a statement, since "he already denied the allegations and ... it would just, it would be redundant information."  Thus, appellee's hindsight second-guessing of counsel in this case involves a strategy which opened the door to the jury learning that, far from remaining "silent" in the face of a criminal accusation and thereby impliedly admitting

3.  There is no suggestion by appellee here that the challenged evidence burdened the right to remain silent other than to the extent it might be deemed a tacit admission.

the accusation, appellee effectively and strongly denied it, albeit through counsel.[4]

Accordingly, even if it were assumed that the jury must have considered the evidence for a purpose other than the narrow purpose for which it was actually proffered, there is no basis for a further assumption that the jury must have concluded that appellee tacitly admitted his guilt in his pre-arrest dealings with police. If the jury was prone to speculation, the trial record at best provided a basis for speculating that appellee cooperated with a police investigation, but on his own terms, *i.e.*, he elected to speak to police through his lawyer, just as criminal defendants routinely do at trial; unequivocally and vehemently denied the accusation; and declined to speak further. Because the jury here heard evidence of an explicit denial of guilt and not a tacit admission, in my view, the trial court clearly was correct the first time around when it found that the claim of counsel ineffectiveness fails. Since counsel did not do what he was accused of doing—*i.e.*, he did not open the door to prejudicial evidence in the form of a tacit admission—the claim of ineffectiveness fails irrespective of counsel's subjective reasons for questioning the trooper.

The mistake made by the Superior Court in this case consisted of its misapprehending federal law as banning all references to pre-arrest silence, except for the single circumstance where that silence "is probative of the defendant's credibility and the defendant will not be unduly prejudiced by its admission." *Commonwealth v. DiNicola*, 797 A.2d 966, 971 (Pa.Super.2002) (*en banc*). As the Majority Opinion aptly notes, this is not the law. Op. at 559–61, 866 A.2d at 335 ("the United States Supreme Court has also recognized that a defendant's silence may bear relevance to, and be admissible to establish, other issues arising in a criminal proceeding;" citing, as an example, the fair response doctrine).

Throughout the majority of Pennsylvania's venerable legal history, relevant implied or tacit admissions were admissible

---

4. That appellee elected to speak through his lawyer does not render this a tacit admission scenario any more applicable than employing a lawyer at trial where a defendant has an actual constitutional right to counsel.

at trial, including criminal trials where the tacit admission was made by the defendant. This Court described the operation of this evidentiary rule as follows:

> The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made.

*Commonwealth v. Vallone,* 347 Pa. 419, 32 A.2d 889, 890 (1943), *overruled in part by Commonwealth v. Dravecz,* 424 Pa. 582, 227 A.2d 904, 906 (1967). This was also the general rule followed in the United States. 1 John W. Strong, *et al., McCormick on Evidence,* § 161 (5th ed. 1999). The basis for permitting tacit admissions is grounded in human experience and was the same in criminal trials as in civil trials: "as in civil litigation, admission is based upon the assumption that human nature is such that innocent persons will usually deny false accusations." McCormick on Evidence, *supra* § 161 at 569. *See also Commonwealth v. Cull,* 540 Pa. 161, 656 A.2d 476, 481 n. 5 (1995) (plurality opinion by Castille, J.) ("The justification of this rule is to be sought in the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt. Its probative force is derived not from the credibility of the accuser but from the silence of the accused in response to it.") (citing *Vallone, supra*).

Although some courts and commentators have called into question the assumption about human nature which powers the tacit admission rule, and particularly in criminal cases,[5] evidence of tacit admissions is still permitted in Pennsylvania—except in the single narrow circumstance where such introduction and use might burden the constitutional right to

---

**5.** *See McCormick on Evidence, supra* § 161 at 569; *Dravecz,* 227 A.2d at 906.

remain silent. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387, 392 (1981) ("implied admissions made while free from custody, with no police present, are still admissible"); *Commonwealth v. Schmidt*, 452 Pa. 185, 299 A.2d 254, 265–66 & n. 15 (1973) (plurality opinion by Pomeroy, J.) (collecting cases). *Accord Cull, supra.* The party against whom a tacit admission is offered, of course, is free to dispute the inference that results either directly at trial or indirectly through jury instructions.

Thus, the approach to claims deriving from alleged improper references to pre-trial silence cannot be monolithic—it must focus instead upon whether this recent exception to the historic rule of admissibility applies to the situation at issue. As this case reveals, not all references to a suspect's interactions with police imply acquiescence in a criminal accusation, otherwise burden the constitutional right to remain silent, or otherwise prejudice the accused. It is wrong to view all references to pre-trial silence as if they automatically trigger the concerns which powered *Doyle* and its progeny. The Superior Court erred in failing to appreciate the history and controlling subtleties in this area of law.

In addition to lacking arguable merit, appellee's ineffective assistance of counsel claim fails as a matter of law for the narrower reason ultimately deemed dispositive by the Majority Opinion, *i.e.*, he has not demonstrated *Strickland/Pierce* prejudice.[6] I am aware that, in *Commonwealth v. Clark*, 533 Pa. 579, 626 A.2d 154 (1993)—a case involving a claim of ineffective assistance in failing to object to a classic *Doyle* violation involving impeachment of the accused with his *post-arrest* silence—this Court found improper references to post-arrest silence to be "innately prejudicial," in the process failing to see any distinction between the direct appeal harm-

---

**6.** *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to prove ineffectiveness of counsel, appellant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) (counsel's performance is evaluated in light of its reasonableness if the underlying claim is of arguable merit; counsel is presumed to have acted effectively; appellant must demonstrate how the ineffectiveness prejudiced him).

less error standard and the prejudice which is required to prove ineffective assistance of counsel. *Id.* at 158.[7] The Majority Opinion is wise to explicitly reject an "innate prejudice" test in this instance, not only because *Clark* involved a post-arrest silence scenario, but more fundamentally because the vitality of *Clark's* broad and unexplained pronouncement on ineffectiveness prejudice is obviously wrong given controlling federal law, as well as subsequent decisions by this Court such as *Commonwealth v. Howard*, 538 Pa. 86, 645 A.2d 1300, 1307–08 (1994), and *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 524–25 (2001), which have recognized the crucial distinction in the tests. *See also Commonwealth v. Gribble*, 580 Pa. 647, 674–78, 863 A.2d 455, 471–73, 2004 WL 2952611, at *14–15 (2004).

In addition, it is notable that the *Clark* Court recognized that *Pierce*, 515 Pa. 153, 527 A.2d 973, provided the governing

---

**7.** It is worth noting that this Court's conclusion of innate prejudice arising from references to the exercise of *Miranda* rights was based upon assumption, rather than empirical evidence. I am concerned that, in continuing to rely upon this mere assumption, we have strayed from the federal standard and the task of judging. The assumption of prejudice dates to 1972, when the *Miranda* decision was but six years old, and was based upon a non-controlling Circuit Court decision which was decided even nearer in time to *Miranda*. *See Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765, 767 (1972) (" 'We would be naïve if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt.' ") (quoting *Walker v. United States*, 404 F.2d 900, 903 (5th Cir.1968)). Given the recency of the *Miranda* decision and its revolutionary effect upon police practice and criminal procedure, perhaps there was a basis for such assumption-based jurisprudence in 1968 and 1972. But, in this day and age, the naiveté consists in accepting that the old assumption arising from the very newness of *Miranda* should retain validity. In this regard, it is notable that one of the reasons why the U.S. Supreme Court recently declined to reconsider or overrule *Miranda* was precisely because "*Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture." *Dickerson v. United States*, 530 U.S. 428, 443, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405 (2000) (citation omitted). Given the national familiarity with the *Miranda* incantation, and nightly examples on television and in movies of suspects invoking, or not invoking, their *Miranda* rights, it defies common sense to unthinkingly assume, and deem determinative, that "most" laypeople would view an exercise of constitutional rights as a badge of guilt. I would jettison this antiquated assumption and return to judging cases on their merits.

standard for assessing prejudice in the context of ineffective assistance of counsel. 626 A.2d at 157. *Pierce*, of course, explicitly held that the Pennsylvania approach to claims of counsel ineffectiveness is the same as the *Strickland* test, including the test for prejudice. *See* 527 A.2d at 976–77 (construing tests as establishing "an identical rule of law in this Commonwealth"). To the extent *Clark* may be read as seeing no distinction in the tests, it is squarely at odds with *Pierce*, and via *Pierce*, squarely at odds with governing precedent from the U.S. Supreme Court, which has held that prejudice will be presumed in conjunction with claims of ineffective assistance of counsel only in three narrow categories of cases, *i.e.*, situations involving (1) an actual denial of counsel, (2) state interference with counsel's assistance, or (3) an actual conflict of interest burdening counsel. *See Bell v. Cone*, 535 U.S. 685, 695–96 n. 3, 122 S.Ct. 1843, 1850–51 n. 3, 152 L.Ed.2d 914 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 1240–41, 152 L.Ed.2d 291 (2002); *United States v. Cronic*, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984). None of those situations is implicated here. Thus, appellee is required to prove actual *Strickland* prejudice, *i.e.*, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.[8]

The Majority Opinion correctly finds that no *Strickland* prejudice can be sustained upon this trial record. The evi-

---

8. The federal courts have specifically employed the *Strickland* prejudice test in analyzing claims of ineffective assistance of counsel for failure to object to a *Doyle* violation. *See Hook v. Iowa*, 307 F.3d 756, 758 (8th Cir.2002) (given strength of evidence, no *Strickland* prejudice when counsel failed to object to admission of testimony that appellant had exercised right to remain silent after being read *Miranda* rights, so court did not reach question of whether counsel's performance was deficient); *Pitts v. Anderson*, 122 F.3d 275 (5th Cir.1997) (analyzing ineffective assistance of counsel claim under *Strickland* and concluding that prosecutor's questions, used to impeach defendant with post-arrest silence, did not violate *Doyle*, so court did not reach question of prejudice); *Stokes v. Procunier*, 744 F.2d 475, 483 (5th Cir.1984) (assuming that counsel's failure to object to questions and comments on defendant's silence violated *Doyle*, there was no prejudice under *Strickland* given strength of evidence).

dence concerning appellees interaction with police before his arrest was neither introduced nor argued in a fashion which was at all likely to burden appellees constitutional right to remain silent. Moreover, the evidence revealed an actual denial of the accusation, rather than a tacit admission of guilt. The revelation to the jury that, consistently with his denial at trial, appellee had denied the accusation pre-trial, probably advanced, rather than hurt, appellees cause. Certainly, there is no reasonable probability that, if the jury had only heard appellee deny it once, rather than twice, he would have been acquitted.

Finally, I write to emphasize that the issue decided today is one of federal law. *See* Majority op. at 559 n. 3, 866 A.2d at 334 n. 3. The Pennsylvania constitutional test for counsel ineffectiveness is the same as the federal *Strickland* test— albeit we further refine the *Strickland* performance and prejudice approach into a three-part inquiry of arguable merit and absence of objective reasonable basis (performance component), and prejudice. *E.g., Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 855 & n. 19 (2003); *Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 41–42 (2002); *Pierce, supra.* I think it is particularly important to make clear that appellee's *Strickland/Doyle* issue concerns federal law only. This Court has invoked the Pennsylvania Constitution to reach beyond the U.S. Supreme Court in extending the temporal coverage of the *Doyle* proscription. *See, e.g., Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537, 539 (1982) (rejecting *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) under aegis of Pennsylvania Constitution and extending *Doyle* to post-arrest, pre-*Miranda* scenario). The present claim, however, sounds in ineffective assistance of counsel and it is settled that the test in that instance, including the test for prejudice, is coterminous. To the extent *Clark* suggests otherwise, it is erroneous and should not be followed.

Justice SAYLOR concurring.

Like Madame Justice Newman, I join the portion of the majority's opinion applying the fair response doctrine under

*United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). Also in line with Justice Newman's position, however, as regards Appellee's claim of ineffective assistance of his trial counsel for implicating the disclosure to the jury that Appellee did not cooperate in police efforts to investigate K.H.'s accusation against him, I respectfully differ with the majority's decision to dispose of the claim on the basis that Appellee suffered no prejudice as a result of the disclosure. On this point, I believe that the majority's analysis does not give sufficient recognition to the central role of Appellee's credibility at trial, in light of the absence of direct evidence to support K.H.'s accusation of criminal conduct on his part. Furthermore, in its prejudice analysis, the majority affords no express consideration to the long line of this Court's decisions recognizing the potential impact that disclosure of a criminal defendant's silence or assertion of privilege in the face of accusation or questioning may have upon a jury determination of guilt versus innocence. *See, e.g., Commonwealth v. Clark,* 533 Pa. 579, 587, 626 A.2d 154, 157–58 (1993) (indicating that improper references to a defendant's post-arrest silence are innately prejudicial); *Commonwealth v. Turner,* 499 Pa. 579, 583, 454 A.2d 537, 539 (1982) ("The view of this Court that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt is well established."); *Commonwealth v. Haideman,* 449 Pa. 367, 371, 296 A.2d 765, 767 (1972) ("We would be naïve if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt.") (quoting *Walker v. United States,* 404 F.2d 900 (5th Cir.1968)).[1]

1. *Accord Snyder v. State,* 361 Md. 580, 762 A.2d 125, 133 (2000) ("Many of our sister states that have considered this issue have expressed their distrust of evidence of pre-arrest silence as probative of a consciousness of guilt, noting its inherently low probative value and its high potential for unfair prejudice.") (collecting cases). Indeed, a number of states have crafted evidentiary rules that presume that the potential for prejudice inherent in such evidence outweighs its probative worth in absence of unusual circumstances. *See, e.g., People v. Conyers,* 52 N.Y.2d 454, 438 N.Y.S.2d 741, 420 N.E.2d 933, 934 (1981); *People v. DeGeorge,* 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11, 13–14 (1989).

While I therefore tend toward Appellee's position regarding the prejudice prong of the ineffectiveness inquiry, in the present posture of the case, I have greater difficulty with his case in terms of the arguable merit and reasonable strategy requirements.

I recognize that counsel's strategy of attacking the police investigation was questionable, in the first instance, as it was clear that the officer's opportunities to uncover direct evidence concerning the alleged criminal conduct were limited (since Appellee and K.H. were the only eyewitnesses); the officer had interviewed a range of staff members and discerned that Appellee was in a position to have perpetrated the alleged criminal act at the time and in the location described by K.H.; the officer had uncovered circumstantial evidence of Appellee's previously having reached or exceeded the boundaries of a professional relationship with K.H.; and counsel was unable to point to any particular exculpatory information that the officer should have learned. Thus, there were apparent downsides to the strategy in terms of drawing the Commonwealth's fair response reference to Appellee's failure to cooperate in the investigation, repetition before the jury of already developed Commonwealth evidence, and fostering of potentially negative impressions that may be associated with assertive examination of a witness at trial, and in particular, one who carries the authority of the state. On the other hand, in the arena of adversarial litigation, occasionally such aggressive tactics will bear fruit. Additionally, as apparently the defense contem-

In place of a discussion of the many decisions concerning prejudice arising from references to a defendant's silence or assertion of privilege in the face of accusation or questioning, the majority diverts its attention to a passage from *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904 (1967), that addresses the low probative value associated with silence in the face of an accusation of criminal conduct. *See* Majority Opinion at 571 n. 8, 866 A.2d at 337 n. 8. As pertains to the relevant issue of prejudice, however, *Dravecz* is entirely consistent with the other decisions of this Court that have recognized the reality that lay jurors may attribute such silence to consciousness of guilt. *See, e.g., Dravecz*, 424 Pa. at 588, 227 A.2d at 907 (characterizing the assertion of a tacit admission as "as insidious as monoxide gas which does not proclaim its presence through sound or smell" and as "a diesel locomotive silently but relentlessly moving forward without audible signals and striking the victim unawares").

plated that Appellee would testify from the outset of the trial,[2] the strategy did not appear to conflict with the overall design of the defense.

The above demonstrates, at a minimum, some of the mixed considerations in play in the evaluation of trial strategy. However, a more concrete weighing, from the appellate perspective, of the strategy, as it relates to the consequence of counsel's implicating the Commonwealth's fair-response reference to Appellee's failure to cooperate in the police investigation, is hampered by the absence of properly focused findings and conclusions from the trial court. This deficit is a result of the proceedings in this case having strayed afield from the essential task of weighing the quality of trial counsel's strategy of attacking the police investigation against the quantum of prejudice inherent in the responsive revelation to the jury of the fact of Appellee's pre-arrest silence.

At the outset, the trial court grounded its first opinion on an incorrect legal conclusion that the case simply did not involve the kinds of concerns associated with references to pre-arrest silence.[3] Thus, the trial court, in the first instance, failed to produce essential and directed factual findings and legal conclusions, grounded in an evidentiary record (indeed, there appears to be no record at all of the initial, post-sentence hearing). On appellate review, the relevant issue was further clouded by the Superior Court panel's mistaken belief that

**2.** *See* N.T., Nov. 19, 1998, at 291 (reflecting trial counsel's explanation to the jury that it was essential for Appellee to present his version of the events that occurred only in his and K.H.'s presence).

**3.** I would explicitly reject this conclusion. Although there may be permutations in which revelation of a defendant's decision to decline an interview may implicate lesser degrees of potential prejudice, *cf. State v. Purvey*, 129 Md.App. 1, 740 A.2d 54, 64 (Md.1999) (holding that a defendant's refusal to reduce a statement to writing, without more, is not an invocation of his or her right to remain silent, thus the admission of such silence in response to a detective's subsequent observation is not in error), here, in addition to the fact of a general denial, the investigating trooper related Appellee's decision to consult with his counsel, and counsel's specific admonition that Appellee would invoke his Fifth Amendment right to remain silent at any interview. *Cf. Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir.2000) (analyzing a defendant's statement to police "talk to my lawyer" as an instance of pre-arrest silence).

Appellee did not testify at his trial. *See Commonwealth v. DiNicola,* 751 A.2d 197, 202 (Pa.Super.2000) (*"DiNicola I"*). Moreover, *DiNicola I* did not consider the matter along the lines of the fair response doctrine under *Robinson,* 485 U.S. at 25, 108 S.Ct. at 864, and thus, did not recognize the interrelationship between trial counsel's initial strategy in questioning the scope of the arresting trooper's investigation and the viability of an objection to the Commonwealth's cross-examination of that officer. The result was that the panel errantly bifurcated its analysis of trial counsel's initial strategy choice and his later failure to object to responsive cross-examination. This is particularly significant because the Superior Court held that the initial strategy choice was reasonable, *see DiNicola I,* 751 A.2d at 200, a conclusion which is fatal to Appellee's present claim and which could not be disturbed in the course of the remand proceedings in the trial court. However, the Superior Court panel's approval of counsel's line of inquiry as supported by a reasonable strategy was via a generalized and conclusory reference to its potential to prove Appellee's innocence, *see id.,* without evaluation of the strategy in terms of its likelihood of achieving that result, or its effect on the availability of an objection to responsive references to Appellee's silence (about which trial counsel was warned at sidebar).

Combined with *DiNicola I's* incorrect, blanket proscription against any reference to silence where a defendant does not testify, *see DiNicola I,* 751 A.2d at 201, these errors had the effect of misdirecting the focus of the proceedings on remand, so that, again, a trial court opinion assessing arguable merit, reasonable strategy, and prejudice in the proper factual and legal context was not produced. Indeed, in light of the trial court's understanding of *DiNicola I's* holding, namely, that references to pre-arrest silence were never admissible under any circumstances, it was a relatively simple matter for the court to conclude that counsel should have objected to the Commonwealth's cross-examination of the trooper which implicated Appellee's silence.

While the Superior Court in *Commonwealth v. DiNicola,* 797 A.2d 966 (Pa.Super.2002) (*"DiNicola II"*), did recognize

*DiNicola I's* most patent error, the *en banc* panel also over-looked the *Robinson* fair response doctrine and therefore accepted the bifurcated manner of review fashioned in *DiNicola I*, refraining from discussion of the ineffectiveness claim in terms of the selection and pursuit of the overall trial strategy of attacking the police investigation, in light of the prior panel's disposition of that issue. Moreover, in the absence of a sufficient opinion from the trial court, the *DiNicola II* court was relegated to speculation in material respects. For example, as the Commonwealth has correctly noted, the reasoning supporting *DiNicola II's* finding of prejudice (namely, that the disclosure of Appellee's pre-arrest silence impeded his remaining silent at trial), is unsupported as of record. In this regard, there is no evidence that the defense trial strategy would have been any different had the disclosure not been made; indeed, as noted, trial counsel explained to the jury that it was essential for Appellee to present his version of the events that occurred in only K.H.'s and his presence. *See supra* note 2.

In this landscape, I would not attempt to undertake, from the appellate perspective and for the first time in this case, a merits determination concerning arguable merit, reasonable strategy, or prejudice in their proper context, particularly as the necessary inquiry is bound up in judgments that may be affected by impressions that are not apparent on the face of the written record. *See generally Commonwealth v. Grant,* 572 Pa. 48, 66, 813 A.2d 726, 737 (2002) (observing that "the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient perform-ance"). Thus, for this case to be decided on the merits, I would agree with Madame Justice Newman that it would be most appropriate for it to be returned to the trial court for the necessary assessment in the first instance.

Appellee, however, presents the argument that further con-sideration of the merits of his claim is unnecessary, contending that waiver principles should be applied to resolve the appeal, since the *DiNicola I* panel's order was a final one, and the

Commonwealth did not appeal the panel's adverse determination with respect to several of its core arguments.

Appellee is correct that under Pennsylvania Rule of Appellate Procedure 1112(b), an order of the Superior Court remanding an appeal, in whole or in part, constitutes a final order subject to such review as may be allowed by this Court under its discretionary review procedures. *See* Pa.R.A.P. 1112(b). Further, at least one intermediate appellate court decision supports Appellee's view that arguments resolved contrary to a litigant's position in a remand opinion of an intermediate appellate court will be deemed waived if the litigant does not seek allowance of appeal prior to effectuation of the remand (or successfully pursue reargument). *See AT & T v. WCAB (DiNapoli)*, 816 A.2d 355, 359 (Pa.Cmwlth.2003). Moreover, no party to this appeal expressly advocates a contrary position.[4]

However, it is significant, in my view, that the *en banc* panel in *DiNicola II* supplanted *DiNicola I's* merits determinations as concerns the arguments that had been resolved unfavorably to the Commonwealth, in apparent application of the exceptional circumstances exception to the law of the case doctrine.[5] Additionally, the legal questions involved pertain to separate but interrelated facets of a single test for assessing the stewardship of counsel.[6] In such circumstances, I would not treat the Commonwealth's issues as waived based on its decision to accede to the remand following *DiNicola I.*[7]

---

**4.** The Commonwealth did not file a reply brief in answer to Appellee's waiver argument.

**5.** Under the law of the case doctrine, upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court. *See Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995). The extraordinary circumstances exception is implicated, however, where the prior holding was clearly erroneous and would create a manifest injustice if followed. *See id.* at 575–76, 664 A.2d at 1332.

**6.** Particularly in the circumstance involving strategic weighing decisions by a trial attorney, the arguable merit and reasonable strategy prongs of the ineffectiveness test may overlap substantially.

**7.** Moreover, I am of the view that the Commonwealth's failure to appeal *DiNicola I* did not deprive this Court of its ability to sustain a

In advancing his theory of waiver, however, Appellee overlooks that he also suffered a material adverse determination in *DiNicola I* that he also did not appeal—the conclusion that trial counsel's attack on the police investigation was grounded

valid judgment for any reason appearing as of record in appropriate circumstances, without requiring of the judgment winner strict adherence to principles of issue presentation and preservation. *See generally McAdoo Borough v. Commonwealth, Pa. Labor Relations Bd.*, 506 Pa. 422, 428–29 n. 5, 485 A.2d 761, 764 n. 5 (1984); *E.J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977); *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 145–46, 189 A.2d 271, 274 (1963); *Sherwood v. Elgart*, 383 Pa. 110, 115, 117 A.2d 899, 901 (1955). Significantly, the focus of the right-for-any-reason doctrine in Pennsylvania is on upholding the judgment of the fact-finding tribunal, not that of the intermediate appellate court. *See, e.g., E.J. McAleer*, 475 Pa. at 613 n. 4, 381 A.2d at 443 n. 4 ("We may, of course, affirm the decision of *the trial court* if the result is correct on any ground . . . ." (emphasis added)); *Commonwealth v. Katze*, 540 Pa. 416, 425, 658 A.2d 345, 349 (1995) (opinion divided on other grounds) ("The Commonwealth, as the [verdict winner and] non-moving party *before the trial court* in the instant matter, had no obligation to preserve issues at the post-trial stage in the appeal process."). This approach mirrors that of virtually every other jurisdiction. *See, e.g., Helvering v. Gowran*, 302 U.S. 238, 245–46, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *SouthTrust Corp. v. James*, 880 So.2d 1117, 1122 (Ala.2003) ("we are cognizant of the settled rule that '[t]he appellate courts will affirm the ruling of *the trial court* if it is right for any reason' "); *State v. Canez*, 202 Ariz. 133, 42 P.3d 564, 582 (2002) ("we are obliged to uphold *the trial court's* ruling if legally correct for any reason"); *National Tax Funding, L.P. v. Harpagon Co.*, 277 Ga. 41, 586 S.E.2d 235, 240 (2003) ("even though *the trial court's* ruling was based upon an insufficient analysis, it was nonetheless correct and is hereby affirmed under the 'right for any reason' rule"); *Robeson v. State*, 285 Md. 498, 403 A.2d 1221, 1223 (1979)("Where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm."). The precept derives from the same doctrinal roots as does the principle that testimony on appeal must be considered in the light most favorable to a verdict-winner, *see generally Hader*, 410 Pa. at 145–46, 189 A.2d at 274; *accord First Union Nat'l Bank v. Turney*, 839 So.2d 774, 777 (Fla.Dist.Ct.App.2003) (citing *Cohen v. Mohawk, Inc.*, 137 So.2d 222, 225 (Fla.1962)), and is also applied in furtherance of judicial economy and the orderly administration of justice. *See, e.g., Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir.2000) ("Where precisely the same result could have been reached on other grounds apparent from the record, sending the case back to the district court is wasteful both for the courts and for the litigants."); *Robeson*, 403 A.2d at 1223. The right-for-any-reason doctrine is, of course, a prudential one, and must be applied with due regard for fairness and its interrelationship with other prevailing precepts of appellate review.

in a reasonable strategy. *See DiNicola I*, 751 A.2d at 200. Moreover, there are substantially better reasons to treat Appellee's omission in this regard as a waiver of further appellate review of the resolution of that issue in *DiNicola I*. In the first instance, Appellee bore the burden of offering any facts essential to his claim into evidence and presenting a full and complete record to the Superior Court in *DiNicola I, see Commonwealth v. Chopak*, 532 Pa. 227, 236 n. 5, 615 A.2d 696, 701 n. 5 (1992), which, for reasons undisclosed as of record, he failed to do. *See* Majority Opinion at 332 & n. 2. Since the Court is presented with no evidence or argument to the effect that Appellee was denied the opportunity to develop his evidence in the post-sentence proceedings, the material deficit in the record discerned by the *DiNicola I* panel should have been deemed fatal to Appellee's initial appeal and should not have resulted in the remand that ensued. Just as critically, in failing to challenge by way of reargument or appeal *DiNicola I's* conclusion that trial counsel's strategy of attacking the police investigation was reasonable, Appellee acceded to a narrowly tailored remand that, by design, would result in a trial court opinion that was again lacking in terms of findings and conclusions essential to success on his claim for relief. In this regard, I note that one of the primary reasons underlying the waiver doctrine is to ensure that the appellate court is provided with the benefit of the trial court's reasoning. *See Commonwealth v. Metz*, 534 Pa. 341, 346 n. 3, 633 A.2d 125, 127 n. 3 (1993).[8] Finally, Appellee himself urges upon this Court the theoretical position concerning waiver that would foreclose further argument on his part pertaining to material aspects of the central issue of reasonable strategy in his counsel's attack on the police investigation, and this is consis-

---

8. The majority addresses the waiver argument as it pertains to the Commonwealth's arguments by concluding that the *DiNicola II's* correction of *DiNicola I's* erroneous assumptions "wiped the slate clean" as concerns waiver. Majority Opinion at 562 n. 7, 866 A.2d at 336 n. 7. Significantly, however, the erroneous assumptions that were corrected did not in any way go to the deficiencies in Appellee's position, in particular, the Superior Court's initial (and never-altered) finding of reasonable strategy on the part of counsel in attacking the police investigation, and Appellee's failure to assure that an adequate record was presented to the Superior Court in the first instance.

tent with presently prevailing law as established by the intermediate appellate courts and in the absence of a definitive ruling by this Court.[9]

In the circumstances, I deem Appellee's arguments concerning the reasonableness of his trial counsel's strategic attack on the police investigation waived as of his failure to appeal *DiNicola I's* adverse determination in this regard.[10] This would have the effect of deferring any further review to the post-conviction stage, at which time Appellee should be permitted to develop any claims of ineffectiveness of counsel in acceding to the Superior Court's initial finding of reasonable strategy, and in failing to present an adequate record to the Superior Court in the first instance. Further, such a decision would highlight this Court's expectation that litigants who have suffered an adverse judgment must ensure that the essential predicates to appellate review are thereafter maintained, or frame their subsequent submissions to the appellate

9. Particularly since both sides of the question are not presented by the parties, I would refrain from a categorical ruling concerning the obligation of a party suffering an adverse determination concerning one particular line of argument in the intermediate appellate courts to file a petition for allowance of appeal in order to preserve the opportunity for further review of that issue. In this regard, I note that, on the one hand, a remand directive bears hallmarks of an interlocutory decision, as the matter is being returned to the adjudicatory level for production of a record (or supplemental record) predicate to any further appellate review. In light of the potential interdependence of issues, and since at least one issue material to the outcome of the case remains to be decided, concerns for fairness and efficiency militate against requiring a potentially interim and unnecessary appeal. On the other hand, there are instances, as here, in which the intermediate appellate court's resolution of issues and arguments may integrally affect the scope of the proceedings on remand, thus militating in favor of requiring any contest to occur prior to effectuation of the remand.

10. While I recognize that the Commonwealth has not pursued this line of waiver argumentation in its brief, I believe that traditional review principles, available to be exercised by this Court of its own accord, permit the Court to look down on the record and determine where the proceedings went awry, and if fault is attributable to the judgment-loser, to uphold the verdict. *See supra* note 7. Here, I find such approach to be greatly preferable to a merits analysis that is grounded on an incomplete record and out of sync with this Court's long-standing understanding of the effect that jurors in their deliberations may give to evidence of a defendant's silence or assertion of privilege in the face of accusation or questioning.

courts to include a challenge to the manner in which their ability to ensure these essential predicates was impeded.

Justice NEWMAN concurring and dissenting.

I concur in the significant principle set forth today in the Majority Opinion that the pre-arrest silence of Appellee was properly admitted as "fair response" to the questioning by trial counsel of the investigating Trooper. The *per se* rule of the Superior Court in *Commonwealth v. DiNicola*, 751 A.2d 197 (Pa.Super.2000) (*DiNicola I*), that pre-arrest silence can be considered by a jury only for the purpose of impeaching a testifying defendant's credibility, imposes a limit without a purpose. The Majority Opinion correctly acknowledges that in *United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the United States Supreme Court recognized that a defendant's silence may be admissible to establish issues in addition to impeachment that arise in a criminal proceeding. Majority Opinion at 559–61, 866 A.2d at 335.

Although I completely agree with the extension of the fair response doctrine to include evidence concerning pre-arrest silence, I dissent from the determination to reverse the Order of the Superior Court and reinstate the judgment of sentence. I dissent because I believe that the majority uses the inadequate record in this matter to make a determination on the merits, finding that Appellee suffered no prejudice. Because many mistakes were made during every level of the proceedings to date, I believe that it is imperative to remand for an evidentiary hearing to conduct a rigorous analysis of Appellee's claim of ineffective assistance of counsel.

The majority notes that Appellee raised two claims of ineffective assistance of counsel. The first one is that trial counsel erred by not objecting to the testimony regarding his pre-arrest silence. Because pre-arrest silence is admissible as fair response, the failure of trial counsel to object to its admission does not constitute ineffective assistance of counsel. I agree with the majority's resolution of this first issue.

My dissent regards the majority's disposition of Appellee's second claim, which posits that counsel erred by opening the door for the prosecution to introduce evidence of his pre-arrest silence. The majority opines that "this claim of ineffectiveness can be definitively resolved by going directly to a consideration of prejudice." Majority Opinion at 561–63, 866 A.2d at 336 (internal citation omitted). I respectfully disagree that this Court can review the issue of prejudice on this record, and I believe that this matter must be remanded to the trial court. On remand, the trial court would now have the benefit of clear direction from this Court, which finds that pre-arrest silence is admissible as fair response and that the failure of trial counsel to object to its admission does not constitute ineffective assistance of counsel. However, the trial court would have to determine whether counsel was ineffective for opening the door to the admission. I believe that this claim must be resolved on the merits, and that, contrary to the disposition of the majority, it is impossible to do this with the existing record.

The majority describes the labyrinthine procedural path traversed by this matter. To illustrate, Appellee filed a post-sentence motion alleging ineffectiveness of counsel for, *inter alia,* opening the door to the testimony revealing the pre-arrest silence. As a result, "[a] hearing on the matter was scheduled; however, the original record presented to this court, contains no transcript of an evidentiary hearing at this stage or any other reference that would indicate whether or not it was actually conducted." Majority Opinion at 555–56, 866 A.2d at 332 (footnote omitted). "The common pleas court did not separately assess the allegations of ineffectiveness; rather, it reached a global conclusion that there was no merit to the allegations of ineffectiveness and denied relief." *Id.* at 555–56, 866 A.2d at 332.

Following that, on appeal, the first Superior Court panel disagreed and opined that **"the prejudice resulting from reference to Appellee's silence was substantial."** *DiNicola I,* 751 A.2d at 202 (emphasis added). However, the Superior Court "deemed the record inadequate to assess whether coun-

sel had a reasonable basis for failing to object" and remanded for an evidentiary hearing limited to this question. Majority Opinion at 556–58, 866 A.2d at 333. At this hearing, counsel gave inconsistent explanations regarding his failure to object to cross-examination of the Trooper, and the trial court determined that all three prongs of the ineffectiveness inquiry were met and that a new trial must be awarded for Appellee.

When the Commonwealth appealed, an *en banc* panel of the Superior Court affirmed, with one dissent, at *Commonwealth v. DiNicola*, 797 A.2d 966 (Pa.Super.2002) (*DiNicola II*). With respect to the prejudice prong of the ineffectiveness inquiry, the court concluded that the prejudice was substantial, because **"the central evidence presented at trial concerning actual criminal conduct on Appellee's part was sharply conflicting, and the jury's resolution was necessarily grounded in credibility determinations."** *DiNicola II*, 797 A.2d at 972 (emphasis added).

Despite the findings of prejudice that the Superior Court in *DiNicola I* and *DiNicola II* made, the majority reaches a directly opposite conclusion in the matter *sub judice* by finding that Appellee's claim fails because he has not proved that without the opening of the door to his pre-arrest silence, the outcome of the proceedings would have been different. The majority determines that "[t]aken at face value, the revelation of silence in this case was limited to its context." Majority Opinion at 563–64, 866 A.2d at 337.

I disagree. Appellee's constitutional right to remain silent may well have been implicated and he may have suffered prejudice as a result of the evidence concerning his pre-arrest silence. The majority concludes that Appellee's Fifth Amendment privilege against self-incrimination was not violated by reference to his pre-arrest silence. Majority Opinion at 552–53, 866 A.2d at 330. I share the perspective of the Superior Court majority that "[w]hen the Commonwealth referenced DiNicola's pre-arrest silence prior to DiNicola testifying, the Commonwealth removed an incentive for DiNicola to assert his right not to testify." *DiNicola II*, 797 A.2d at 972. The Superior Court noted that "[t]his case was based solely on the

jury's credibility determinations." *Id.* This results from the fact that the matter essentially pitted Appellee's word against that of a fourteen-year-old girl, where the central evidence at trial was in sharp conflict regarding Appellee's guilt and where it was incumbent on the jury to make essential credibility determinations. Like the majority in *DiNicola II*, I believe that the prejudice resulting from the reference to pre-arrest silence could have been significant and may have been a motivating factor in Appellee's decision to forego his Fifth Amendment privilege.

This Court explained in *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994), that "there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt.... The rationale is that jurors expect an innocent person charged with a crime to deny guilt." *Id.* at 404–405.[1]

In the case *sub judice,* after interviewing employees at the facility, the Trooper called Appellee for an interview, indicating that there had been allegations made against him regarding his employment. Appellee declined to meet with him, saying that he wanted to consult his attorney. Later, the attorney contacted the Trooper, telling him that Appellee denied any inappropriate conduct, but that, on advice of counsel, would assert his Fifth Amendment right to remain silent at any police interview. Whether or not appropriate on their part, I believe that the jury might well have expected an innocent person to deny involvement in the offenses involving the child victim, rather than to assert his Fifth Amendment right to remain silent, and that evidence of Appellee's refusal to speak with the Trooper and failure to deny the allegations in that conversation could well have prejudiced him. The majority recognizes that the panel in *DiNicola I* found that "the prejudice resulting from reference to Appellee's silence was substantial." Majority Opinion at 556–58, 866 A.2d at

1. Although *Crews* involved this Court's analysis of *post-arrest* silence, I believe that our delineation of the circumstances in which prejudicial inferences can be drawn from silence is germane to the matter *sub judice.*

333. However, the majority labels this finding "conclusory." *Id.* On remand following *DiNicola I,* the trial court determined that all three prongs of the ineffectiveness inquiry had been met and awarded Appellee a new trial. In the *DiNicola II* appeal, the Superior Court again found that the prejudice resulting from the reference to the pre-arrest silence was substantial. I respectfully posit that the majority in the matter *sub judice* has leapt to an unsupported conclusion with its determination that the revelation of the silence had a limited impact when taken at face value.

Because Appellee's very freedom is at issue and given the many mistakes of law and fact that occurred prior to this time, I believe that a new evidentiary hearing is warranted with respect to Appellee's second ineffectiveness claim. At such hearing, Appellee would have to prove each of the three prongs of the test for ineffectiveness of counsel demonstrating that: (1) his underlying claim has arguable merit; (2) counsel's decision to question the Trooper with respect to the scope of his investigation did not have some reasonable basis designed to effectuate Appellee's interests; and (3) Appellee was prejudiced by counsel's action. *Commonwealth v. Smith,* 539 Pa. 128, 650 A.2d 863, 866 (1994).

While I fully concur with the extension of the fair response doctrine to allow admission of pre-arrest silence, this does not dispose of the need to remand this matter to address Appellee's remaining claim alleging that counsel was ineffective for opening the door in the first place to the disclosure of his pre-arrest silence.