J-S80035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :            PENNSYLVANIA
   :
v.   :
   :
   :
ANTHONY NGUIEN,   :
   :
Appellant   :   No. 3167 EDA 2017

Appeal from the Judgment of Sentence September 18, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011976-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:           **FILED MAY 22, 2019**

Appellant Anthony Nguien appeals from the judgement of sentence following his convictions for rape, unlawful contact with a minor, involuntary deviate sexual intercourse (IDSI) with a child, IDSI with a person less than sixteen years of age, and corruption of minors.[1]  Appellant argues that the trial court erred by denying his motion for a mistrial, failing to give a jury instruction, and limiting the scope of cross-examination.  Appellant also challenges the court's designation of Appellant as a sexually violent predator (SVP).  We affirm Appellant's convictions, but vacate Appellant's designation as an SVP and remand the matter for further proceedings.

The trial court summarized the facts of this matter as follows:

---

[1] 18 Pa.C.S. §§ 3121(a)(1), 6318(a)(1), 3123(b), 3123(a)(7), and 6301(a)(1)(i).

[W]hen [the victim] was between the ages of seven to fourteen, she was sexually abused by her stepfather, Appellant. [The victim] was age seven when she initially told her mother about the abuse. As a result, [the victim] was not believed and was sent to live with a family friend known as "Grandmom Gwen." During that time, for five years[, the victim]'s mother was incarcerated. Appellant continued to sexually assault [the victim] under the guise of taking her for visits with her brothers. [The victim] wrote letters to her mother to advise of the abuse. Upon the release of the mother from prison in 2011, [the victim] returned to live with her, Appellant[,] and her brothers. The sexual assaults continued[] almost every day. Again, [the victim] attempted to alert her mother, who reacted negatively. Finally, in April 2013[, the victim] disclosed the sexual abuse to a teacher and the authorities became involved. When the mother refused to remove Appellant from the home[, the victim] was removed and ultimately sent to live with her biological father in California.

Trial Ct. Op., 3/22/18, at 3.

On April 19, 2017, Appellant proceeded to a jury trial.[2] On the first day of trial, Appellant litigated a motion *in limine* to admit evidence to impeach the Commonwealth's witness, Detective Linda Blowes, who was the investigating detective in Appellant's case. Specifically, Appellant sought to introduce a lawsuit filed against Detective Blowes based on her conduct in a 2008 kidnapping investigation.[3] N.T. Trial, 4/19/17, at 57.[4] Appellant argued

_____

[2] This was Appellant's second trial. His first trial resulted in a mistrial due to a hung jury.

[3] Appellant presented to the trial court a 2013 Commonwealth Court opinion affirming a civil judgment entered against Detective Blowes by the Court of Common Pleas.

[4] An appellant has a duty to ensure that the certified record is complete. Although the certified record does not contain transcripts of testimony, copies of the relevant transcripts were included in the reproduced record. The

that the 2008 matter had similarities to the instant case, and that he should be permitted to impeach Detective Blowes "with her performance[,] as it was criticized by the Commonwealth Court." N.T. Trial, 4/20/17, at 115. On April 20, 2017, the trial court denied Appellant's motion, concluding that the 2008 case was "unrelated" and had no bearing on Appellant's case. *Id.* at 117.

The following day, the Commonwealth continued with its case-in-chief and called Detective Blowes to testify. On direct examination, the Commonwealth asked Detective Blowes several questions about her investigation. The Commonwealth asked Detective Blowes who she attempted to interview while investigating the allegations against Appellant. N.T. Trial, 4/24/17, at 36. In one of her responses, Detective Blowes stated that she attempted to interview Appellant. *Id.* Appellant did not immediately object. The Commonwealth conducted the remainder of its examination of Detective Blowes, *see id.* at 36-39, and Appellant cross-examined the detective. *See id.* at 40-45. Following a brief redirect and re-cross, the trial court excused Detective Blowes. The Commonwealth rested its case, and the court called for a brief recess.

After the jury exited the courtroom, Appellant requested a mistrial based on Detective Blowes' testimony that she attempted to interview Appellant. *Id.* at 49. The trial court denied Appellant's motion for a mistrial, noting that

Commonwealth has not objected to the accuracy of those copies. Therefore, we decline to find waiver. *See* Pa.R.A.P. 1921; *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

Detective Blowes made the statement "in passing, there was no follow up, [and] there was no objection at the time." *Id.* at 50. Appellant declined the trial court's offer to issue a cautionary instruction. *Id.*

Appellant did not testify at trial. However, he presented character witnesses, who testified against the victim and in his favor.

At the close of evidence, the trial court held a charging conference. Appellant requested an instruction on the use of character evidence, as well as a no-adverse-inference instruction. *Id.* at 68. Appellant did not request a prompt complaint instruction at the charging conference. After the trial court issued its charge to the jury, Appellant did not object to the absence of a prompt complaint instruction.

On April 25, 2017, the jury convicted Appellant of the foregoing crimes. Sentencing was deferred for preparation of a sexual offender assessment, presentence investigation (PSI) report, and a mental health evaluation.

On September 18, 2017, Appellant was sentenced to an aggregate term of ten to twenty years' incarceration followed by ten years' probation. Appellant was deemed an SVP under 42 Pa.C.S. § 9799.24(e)(3) (subsequently amended February 21, 2018).

Appellant filed a timely notice of appeal on September 25, 2017. Thereafter, he filed a timely court-ordered Pa.R.A.P. 1925(b) statement,[5]

_____

[5] Although Appellant raised an additional issue in his Rule 1925(b) statement, he has abandoned this issue on appeal by failing to raise it in his brief. *See*

which he later amended to include an additional claim. The trial court filed a Rule 1925(a) opinion concluding that Appellant's claims were meritless.

Appellant raises the following questions for our review:

1. Did the trial court err and abuse its discretion in denying [A]ppellant's motion for mistrial where the investigating detective testified that [s]he attempted to interview the [A]ppellant, thereby informing the jury that [A]ppellant did not submit to an interview in violation of [A]ppellant's Fifth Amendment rights under the United States Constitution and his rights under Article 1, Section 9 of the Pennsylvania Constitution, and his rights to due process of law under the United States Constitution?

2. Did the trial court err and abuse its discretion by denying Appellant's request for the standard jury charge pertaining to [the victim's] failure to make a prompt complaint following a sexual assault and, in so doing, denied Appellant due process of law and a fair trial[?]

3. Did the trial court err and abuse its discretion by denying the [A]ppellant the opportunity to cross examine the investigating detective about her past history about being sanctioned for improper investigative techniques where similar circumstances were present in Appellant's case and by limiting such cross-examination denied [A]ppellant['s] Sixth Amendment right to confrontation under the United States Constitution[?]

4. Did the trial court's determination that [A]ppellant was a sexually violent predator under 42 Pa. C.S. § 9799.24(e)(3) violate the federal and state constitution because it increases the criminal penalty to which [A]ppellant is exposed without the chosen factfinder making necessary factual findings beyond a reasonable doubt as set forth in *Commonwealth v. Butler*,

---

*Commonwealth v. Rodgers*, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief" (citation omitted)).

> [173 A.3d 1212 (Pa. Super. 2017), **appeal granted**, 190 A.3d
> 581 (Pa. 2018)?]

Appellant's Brief at 4-5 (some capitalization omitted).

In his first claim, Appellant argues that the trial court erred in denying his motion for a mistrial after the Commonwealth elicited testimony from Detective Blowes relating to Appellant's silence. *Id.* at 18. By way of background to Appellant's claim, during the Commonwealth's direct examination of Detective Blowes, the following exchange occurred:

> [The Commonwealth]: When did you interview [the victim's Mother]?
>
> [Detective Blowes]: I interviewed her on 4/15/2013.
>
> [The Commonwealth]: Okay. So about four days after [the victim] was interviewed?
>
> [Detective Blowes]: Yes.
>
> [The Commonwealth]: Detective, did you attempt to interview anyone else in this case?
>
> [Detective Blowes]: Yes, I did.
>
> [The Commonwealth]: Who did you attempt to interview?
>
> [Detective Blowes]: [Appellant].
>
> [The Commonwealth]: Okay. Did you attempt to interview [the family friend, Grandma Gwen, or her daughter]?

N.T. Trial, 4/24/17, at 35-36.

After the Commonwealth rested and the jury was excused, the following discussion occurred:

> [Appellant's Counsel]: . . . And, Your Honor, I should also note that I did not lodge an objection to the detective responding to counsel's question. I know counsel did not intend to elicit this

answer, but the witness responded in response to a question about I think the question was did you interview or did you attempt to interview anyone and she said, yes, the [Appellant]. I didn't want to object at that point because I didn't want to highlight the fact that no - -

THE COURT: Was there any follow up after that?

[The Commonwealth]: Your Honor, I did not ask any follow up questions.

[Appellant's Counsel]: No.

[The Commonwealth]: I did not intend to elicit it and I wanted to get out of there as fast as possible.

[Appellant's Counsel]: I know and I appreciate that.

[The Commonwealth:]  So - -

[Appellant's Counsel]: May I just have one moment with my client?

THE COURT: Sure.

(Pause.)

[Appellant's Counsel]: Your Honor, my client -- I informed my client about the possible implications of the detective's testimony and the consequences of the [c]ourt granting a mistrial should I ask for one and in the interest of being overly protective here of my client's rights and interest I would ask for a mistrial.

THE COURT: Well, that's denied.  I'm not going to grant a mistrial for something that was in passing, there was no further follow up, there was no objection at the time.  You are raising it at this time and – so anyway, a mistrial is denied.  Do you wish the [c]ourt to take any further action in terms of making reference to it?

[Appellant's Counsel]: No, Your Honor.

THE COURT:  Very well.

*Id.* at 48-50.

On appeal, Appellant alleges that Detective Blowes' testimony showed "that there was an attempt to obtain [Appellant's statement], establishing by clear and necessary inference that [A]ppellant refused to speak." Appellant's Brief at 18. Further, Appellant claims that "[t]he language utilized was manifestly intended for the jury to take the comment as evidence of [A]ppellant's guilt; [A]ppellant refused to be interviewed because he was guilty." *Id.* Therefore, Appellant concludes that a mistrial should have been granted.[6]

Our standard of review in this context is as follows:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by

---

[6] Appellant acknowledges that he did not immediately object to Detective Blowes' testimony at trial. He asserts that trial counsel "rightly recognized that no attempt at a curative instruction could undo the harm caused by the detective's testimony and that any further reference to his client's silence would only further the damage." Appellant's Brief at 21.

Given the timing of Appellant's motion for a mistrial, we could find this claim waived. *See* Pa.R.Crim.P. 605(B) (stating that "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed"); *see also Commonwealth v. Cornelius*, 180 A.3d 1256, 1262 (Pa. Super. 2018) (concluding that the defendant's challenge to the denial of a mistrial was waived for appellate review because the defendant failed to object to the allegedly prejudicial disclosure at the time it was made).

Nevertheless, we decline to find waiver, as it was reasonable for counsel to delay further action until the jury left the courtroom. Accordingly, we will address Appellant's claim.

preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007) (citation omitted).

The Pennsylvania Supreme Court has held that

mere reference to a defendant's silence does not necessarily impinge constitutional rights when guilt is not implied. ***See*** [***Commonwealth v. DiNicola***, 866 A.2d 329, 337 (Pa. 2005); ***Commonwealth v. Whitney***, 708 A.2d 471, 478 (Pa. 1998).] While we have interpreted the constitutional right against self-incrimination generally to prohibit prosecutors from referencing a defendant's silence as substantive evidence of guilt, [the Supreme] Court has also concluded that the right against self-incrimination is not burdened when the reference to silence is "circumspect" and does not "create an inference of an admission of guilt." ***DiNicola***, 866 A.2d at 337. As noted above, "[e]ven an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt." ***See id.*** (quoting ***Whitney***, 708 A.2d at 478).

***Commonwealth v. Adams***, 104 A.3d 511, 517 (Pa. 2014) (plurality) (footnote omitted) (holding that testimony relating to the defendant's refusal to speak to officers "did not unconstitutionally burden [the d]efendant's right against self-incrimination, because the reference was contextual and brief and did not highlight [the d]efendant's silence as evidence of guilt" and was instead "simply utilized to recount the sequence of the investigation"); ***see also Commonwealth v. Molina***, 33 A.3d 51, 56 (Pa. Super. 2011) (*en banc*) (stating that the Commonwealth's exploitation of otherwise harmless testimony by the detective violated the defendant's rights because "the prosecutor deliberately exploited [the defendant's] silence by asking the jury

to infer guilt from the fact that he refused to go to the police station to be interviewed"), *aff'd*, 104 A.3d 430 (Pa. 2014).

Here, as noted by Appellant's counsel at trial, there is no indication that the Commonwealth intended to elicit Detective Blowes' reference to Appellant. N.T. Trial, 4/24/17, at 48. Further, the reference to Appellant's silence occurred in a context that was unlikely to imply guilt. *See DiNicola*, 866 A.2d at 337. Specifically, Detective Blowes indicated that she attempted to interview Appellant in response to a series of questions about the sequence of her investigation. *See Adams*, 104 A.3d at 518. Further, the Commonwealth did not ask any follow-up questions, and made no further reference to the testimony at trial or during closing arguments. *See Molina*, 33 A.3d at 56. For these reasons, we agree with the trial court that Appellant's right against self-incrimination was not burdened by Detective Blowes' testimony. *See Adams*, 104 A.3d at 518; *DiNicola*, 866 A.2d at 337; *Molina*, 33 A.3d at 56. Accordingly, we find no abuse of discretion in the trial court's conclusion that a mistrial was unwarranted. *See Johnson*, 107 A.3d at 77. Therefore, no relief is due.

Appellant next claims that the trial court erred in denying his request for a prompt complaint jury instruction.[7] Appellant's Brief at 22. Appellant

---

[7] "The prompt complaint instruction is based upon a belief that a victim of a violent assault would reveal the assault occurred at the first available opportunity. [T]he purpose of the instruction is to allow a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted).

acknowledges that he did not request the instruction during his second trial. Instead, he argues that because he requested the instruction at the first trial, and the trial court denied his request, the court's omission became the law of the case. Therefore, he claims that his objection to the court's omission was preserved at the first trial.

The law of the case doctrine provides that "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter." **Commonwealth v. Wallace**, 870 A.2d 838, 842 n.4 (Pa. 2005) (emphasis and citation omitted). However, our Supreme Court has long held that

> [w]hen a court grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held. . . . By the operation of an order granting a new trial, the cause, in contemplation of law, is precisely in the same condition as if no previous trial had been held.

**Commonwealth v. Hart**, 387 A.2d 845, 847 (Pa. 1978) (citation omitted); **see Commonwealth v. Paddy**, 800 A.2d 294, 311 (Pa. 2002) (stating that "the grant of a new trial 'wipes the slate clean'" (citation omitted)).

With respect to jury instructions, we have explained that

> [a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver. Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary.

- 11 -

*Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted); *see* Pa.R.Crim.P. 647(C) (stating that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate"); *see also* Pa.R.A.P. 302(b) (stating that "[a] general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of").

Here, because Appellant was granted a new trial, his case was "precisely in the same condition as if no previous trial had been held." *See Hart*, 387 A.2d at 847. Therefore, in order to preserve his challenge to the trial court's jury instructions, Appellant should have specifically objected to the absence of the prompt complaint instruction during this second trial.[8] *See* Pa.R.A.P. 302(b). Because Appellant failed to do so, his claim is waived. *See* Pa.R.Crim.P. 647(C); *Moury*, 992 A.2d at 178.

In his next issue, Appellant argues that the trial court erred by limiting his cross-examination of Detective Blowes. Appellant's Brief at 30. By way

_____

[8] Further, we agree with the trial court that an instruction on the victim's failure to make a prompt complaint was inappropriate given the facts of the case. The victim alleged that the abuse occurred while she was between ages seven and fourteen, and that it was committed by her stepfather, a person of authority and close relationship to the victim. *See Commonwealth v. Jones*, 672 A.2d 1353, 1357 n.2 (Pa. Super. 1996) (noting that "[w]here an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of prompt complaint would not necessarily justify an inference of fabrication." (citation omitted)).

- 12 -

of background to this claim, at trial, Appellant set forth the basis for his motion

*in limine* as follows:

> I have a motion that would be in the nature of [an] *in limine* request to ask [Detective Blowes] about. There's an appellate case that I found. I have a copy for the [c]ourt and counsel. I'm handing one up to the [c]ourt. It's a non-reported Commonwealth [C]ourt decision. It was a civil case initiated against the detective wherein on page 20 at the bottom going to page 21[,] the court had found that the evidence, and I'm quoting now, the evidence supports the conclusion that [Detective Blowes] knowingly made material misrepresentations and omissions in her affidavit of probable cause. However, the record also contained voluminous evidence of [Detective Blowes'] overall deficient investigation which supports the conclusion that [Detective Blowes'] conduct was willful, deliberate, and knowing.
>
> The reason why I want to ask [Detective Blowes] about it is because -- and I don't necessarily have to do it in a context that references the case, but in this case there was no attempt to investigate any physical evidence in [Appellant's] home. I don't know of any evidence or any efforts that were made by the detective to follow up with any of the prompt complaint witnesses with the exception of [the family friend, Grandma Gwen, and her daughter].
>
> I don't think an interview was ever conducted of [Grandma Gwen], but the 49 does reflect that the phone call was at least made to her. I don't know that [Detective Blowes] was, in fact, reprimanded or disciplined internally by the police department concerning this particular case against her. But it appears that she does at least have a history of not thoroughly investigating cases.
>
> In [the prior] case, Your Honor, there was an allegation that an infant was kidnapped. [Detective Blowes,] in [that] case[,] did not investigate even the birth of the infant child and, in fact, the complainant in the underlying case never gave birth to a child. There was never any kidnapping whatsoever. Yet the defendant was, in fact, arrested on the basis of a warrant that was obtained that was, in the words of the court, deficient in terms of it being investigated and deficient in terms of what should have been done based upon the standard of care for a detective.

- 13 -

N.T. Trial, 4/19/17, at 56-58.

Thereafter, the trial court granted the Commonwealth's request for time to review the appellate case submitted with Appellant's motion. The next day, the discussion continued:

[Defense Counsel:] There was several aspects of the case that were either not investigated at all or improperly investigated, and some of what was said in the case and giving the ruling of the case I had inquired of counsel as to whether she was aware of any discipline that resulted from the case. And I respectfully would like to impeach Detective Blowes with her performance as it was criticized by Commonwealth [C]ourt.

THE COURT: Well, but that is specific as to that case?

[Defense Counsel]: Correct.

THE COURT: I'll hear from the Commonwealth.

[The Commonwealth:] Your Honor, it's the Commonwealth's position that this is completely irrelevant to the case that she -- and her investigation that was conducted in this matter that's before the jury. I think it's an attempt to elicit propensity and habit evidence, I think, where that's inappropriate here. It's -- again, it's a completely different type of case. I think this would just be an attempt to bias the jury that [Detective Blowes] acted poorly in one case and is therefore acting poorly in this case.

I think that her investigation, or lack thereof, in this case is certainly subject to counsel's cross-examination, but floating a lawsuit in front of the jury I just think is irrelevant in this case.

THE COURT: And she -- well, and when did that happen? When was that?

* * *

THE COURT: Or the incident in that case was in what year? It looks like this is an appeal from an August 2013 order of Common Pleas Court.

[The Commonwealth]: It began on April 14th, 2008, it says. That was when the initial report came into Special Victims.

- 14 -

THE COURT: And [Detective Blowes] was not removed from the force?

[The Commonwealth]: She was not. She's still a current detective at Special Victims.

THE COURT: And what was the outcome of this case, Joyce Combs vs. Detective Blowes?

[The Commonwealth]: She was fined civilly. I think she had to pay $100,000.

THE COURT: So that was a civil matter.

[The Commonwealth]: It was a civil matter only.

THE COURT: And she was not removed from the force as a result of this case?

[The Commonwealth]: Correct.

* * *

THE COURT: I'm going to deny the defense motion in which to impeach in a criminal matter and the matter of Joyce Combs vs. Detective Linda Blowes, opinion filed February 17th, 2015. So that is denied.

N.T. Trial, 4/20/17, at 114-117. Thereafter, in its Rule 1925(a) opinion, the trial court concluded that Detective Blowes' prior conduct "had nothing to do with [her] investigations in Appellant's case." Trial Ct. Op., 3/22/18, at 6.

On appeal, Appellant argues that he should have been permitted to question Detective Blowes about a civil judgment relating to her misconduct in a 2008 kidnapping investigation. Appellant's Brief at 30. Appellant contends that Detective Blowes failed to conduct a thorough investigation in the instant case because her investigation did not include "a search for physical evidence at the scene of the alleged assaults" or "interviews of potentially critical witnesses." *Id.* Appellant asserts that "[w]hether this

omission . . . was gross neglect or the manifestation of a design to avoid the procurement of evidence that could hurt the prosecution['s] case was a fair avenue of impeachment." *Id.* at 30-31. To that end, Appellant argues that he should have been able to introduce the civil lawsuit to demonstrate Detective Blowes' "knowledge, motive and intent with respect to the manner in which the investigation was directed" or, "at the very least, to show that gross incompetence denied [A]ppellant the opportunity to have the allegations fully and fairly vetted." *Id.* at 31.

The following principles govern our review. The right to cross-examine witnesses, although fundamental, is not absolute. *Commonwealth v. Rosser*, 135 A.3d 1077, 1088 (Pa. Super. 2016) (*en banc*). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." *Commonwealth v. Briggs*, 12 A.3d 291, 335 (Pa. 2011) (quotation marks and citations omitted).

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides a defendant with a constitutional right "to conduct cross-examination that reveals any motive that a witness may have to testify falsely." *Commonwealth v. Bozyk*, 987 A.2d 753, 756 (Pa. Super. 2009). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of

the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (citation omitted).

> Further, we have explained that
>
> [t]he pertinent case law permits a police witness to be cross-examined about misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate . . . .
>
> However, if the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident. *Commonwealth v. Boczkowski*, 846 A.2d 75 ([Pa.] 2004) (fact that police witness withheld evidence in prior case was not relevant because there was no evidence of withholding evidence in case at hand); *Commonwealth v. Bright*, 420 A.2d 714 ([Pa.] 1980) (defendant could not impeach police officer with potential disciplinary action for excessive use of force by different officer since that cross-examination had no relationship to case in question) . . . .

*Id.* at 757 (some citations omitted).

Following our review of the record, we agree with the trial court's finding that Detective Blowes' conduct in the unrelated 2008 kidnapping case was irrelevant to the pending criminal charges against Appellant. *See Bozyk*, 987 A.2d at 756-57. Other than theorizing that Detective Blowes "had a history" of inadequately investigating cases, Appellant has failed to demonstrate any link between Detective Blowes' prior conduct and Appellant's case.[9] *See Boczkowski*, 846 A.2d at 96 (stating that "[t]he trial court did not abuse its

---

[9] As noted by the trial court, there was a civil judgment against Detective Blowes, but she was never removed from the police force as a result of the suit. *See* N.T. Trial, 4/20/17, at 117.

- 17 -

discretion in ruling that appellant's attenuated theory did not alter the fact that the evidence he offered was collateral and irrelevant"). Therefore, we discern no abuse of discretion by the trial court in precluding Appellant from questioning Detective Blowes about the prior incident.[10] **See Briggs**, 12 A.3d at 335; **Bozyk**, 987 A.2d at 756-57. Accordingly, no relief is due on Appellant's claim.

In his final issue, Appellant argues that that his designation as an SVP under the Sexual Offender Registration and Notification Act (SORNA) is illegal pursuant to our Supreme Court's decision in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), and this Court's subsequent holding in **Butler**. Appellant's Brief at 34. Appellant requests that we remand the matter to the trial court for a proper determination of Appellant's tier-based registration requirements. **Id.** at 35. We agree.

In **Muniz**, this Court held that the registration requirements established by SORNA constitute criminal punishment as opposed to a civil penalty, and therefore, their retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **Muniz**, 164 A.2d at 1193. Subsequently, this Court held that applying SORNA's aggravated registration periods for those found to be SVPs is unconstitutional. **Butler**, 173 A.3d at 1217. In **Butler**, we held that "[S]ection 9799.24(e)(3) of SORNA [regarding

---

[10] We also note that Appellant cross-examined Detective Blowes about the alleged inadequacies of her investigation. **See** N.T. Trial, 4/24/17, at 40-46.

SVP designation] violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." *Id.* at 1218.

Here, the trial court conducted an SVP hearing and determined Appellant to be an SVP by clear and convincing evidence, rather than beyond a reasonable doubt. Under *Muniz* and *Butler*, we conclude that the trial court's September 18, 2017 order deeming Appellant to be an SVP is unconstitutional and constitutes an illegal sentence. Therefore, we vacate Appellant's SVP status and, in accordance with *Butler*, remand this matter to the trial court to issue appropriate notice to Appellant of his registration obligations pursuant to 42 Pa.C.S. § 9799.23.

Judgment of sentence affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/19