**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 25 WAP 2012 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court entered November 9, 2011 at No. |
| | : 1948 WDA 2007, reversing and vacating |
| v. | : the Judgment of Sentence of the Court of |
| | : Common Pleas of Allegheny County |
| | : entered March 15, 2007 at |
| MICHAEL MOLINA, | : CP-02-CR-0007403-2004 and |
| | : CP-02-CR-0009547-2004 and remanding. |
| Appellee | : |
| | : ARGUED:   September 10, 2013 |

**DISSENTING OPINION**

**MR. JUSTICE EAKIN**                    **DECIDED:   NOVEMBER 20, 2014**

My colleagues frame the Superior Court's sole rationale for reversal as "the prosecutor utilized [appellee]'s refusal to speak further with the detective as substantive evidence of his guilt in his closing argument."   Opinion Announcing Judgment of Court Slip Op., at 9.   Appellee puts it this way in his brief: "The Fifth Amendment violation did not occur when [appellee] refused to talk, or even at the time that the testimony of [his] silence was presented for another purpose; the violation occurred when the prosecutor told the jury to use [appellee]'s silence to convict him."   Appellee's Brief, at 14.   He contends "[t]he prosecutor in this case during his closing argument told the jury that [his] silence prior to being arrested showed proof of guilt."   Id.

Thus, the issue before us is quite limited: whether the prosecutor's narrow remark constituted an improper reference to the accused's articulated exercise of his right

against self-incrimination. I find three major problems with the decision to affirm the grant of a new trial on this basis.

First, there was no "silence" for the prosecutor to refer to in the first place — appellee verbalized a refusal to go to the police station, terminating a phone call which was initiated by appellee himself. This is not silence at all — it was an affirmative statement unrelated to an exercise of rights.

Secondly, there was no assertion whatsoever of the right against self-incrimination, express or implied, much less one which was unequivocal. Even if the Pennsylvania Constitution is implicated here, and even if that were to require the analysis my colleagues suggest, there must still be some affirmative evidence of that invocation; here, there was none.

Finally, the prosecutor's reference was to factual testimony <u>already</u> <u>heard</u> <u>by</u> <u>the</u> <u>jury</u>, which is unchallenged herein. Any effort to "utilize" the evidence or make argument about its significance was preempted by timely objection.

Respectfully, the prosecutor never committed the sins laid at his feet. He never told the jury appellee's "refusal to speak further" or his "silence" showed guilt. Whatever additional comments might have been considered by the prosecutor, the record shows he never utilized appellee's refusal at all — the timely objection by vigilant defense counsel cut short any utilization. The prosecutor repeated the acknowledged facts and testimony about appellee's refusal to continue the conversation at the police station; when he asked "and why?" the objection was lodged and nothing followed — the record shows the refusal was never argued. Had there been no objection, perhaps there might have been argument about the inferences that logically flow from a sudden shift from self-initiated

cooperation, but the objection prevented it. The prosecutor never said his "silence prior to being arrested showed proof of guilt." Cf. id. My colleagues adopt appellee's conclusory version of the statement, but the record shows clearly that the significance of the termination of the phone call was not argued to the jury at all. The very premise of appellee's complaint does not exist.

Even had such an argument been made by the prosecutor, a lawyer's argument is never substantive evidence. See Commonwealth v. Puksar, 951 A.2d 267, 280 (Pa. 2008) ("[A]rguments of counsel are not evidence[.]"). An argument takes the evidence the jury has already heard and suggests its relevance or importance and points out logical inferences. Absent a limiting order not present here, it is hardly a constitutional violation to refer to the evidence properly before the jury, which in this case included appellee's declining to go to the station. Whatever the value of that evidence, it was properly before the jury long before the prosecutor repeated it, and there was no argument involving silence. This isolated reference, 29 pages into the transcript of the closing argument, was a reference to existing evidence and was at most a mere preface to something that ultimately never happened. It is difficult to understand how it becomes a constitutional violation to repeat, without argument, affirmative evidence which no one argues was improperly admitted.

To complain of denial of the right against self-incrimination under either the federal or state constitution, one must empirically invoke that right. Such an invocation was never expressed and, in my judgment, is not reasonably inferred from appellee's declination to continue the conversation at the police station. I agree that "talismanic invocation of the constitutional provision" is not required to invoke the right, see Opinion

Announcing Judgment of Court Slip Op., at 12, but this does not excuse the obligation to say or do something to invoke it. The right still must be affirmatively asserted — a defendant "must claim it or he will not be considered to have been 'compelled[.]'" Minnesota v. Murphy, 465 U.S. 420, 427 (1984) (citation and internal quotation marks omitted). According to the lead opinion, this Court's state constitutional precedent has not required express invocation of the right against self-incrimination, but rather is "more aligned with" the reasoning of the Salinas[1] dissent, which inferred invocation of the right from surrounding circumstances. See Opinion Announcing Judgment of Court Slip Op., at 11. We have not adopted any such principle heretofore. In support, the lead opinion also cites Commonwealth v. Chmiel, 889 A.2d 501 (Pa. 2005), where this Court stated a defendant's refusal to give his whereabouts on a specific date constituted invocation of his right against self-incrimination.

Chmiel and Salinas both involve custodial interrogations — they occurred while the accused was in what cases describe as the coercive clutches of the police. Specifically, Chmiel was in custody when police asked where he was on the night of the murder; he replied, "'I don't think I better talk about that.'" Id., at 529. Chmiel does not comprise a departure from federal Fifth Amendment jurisprudence, which requires a clear invocation of the right against self-incrimination. Factually, the case includes an unequivocal statement that Chmiel did not wish to speak of the matter further. That contrasts sharply with the present non-custodial, pre-discovery-of-a-crime phone

---

[1] Salinas v. Texas, 133 S. Ct. 2174 (2013) (plurality opinion). It is worth noting that the Salinas plurality required one to "expressly invoke" the Fifth Amendment right. While appellee debatably raises Article 1 § 9 of the state constitution, his argument treats the two rights as if they are identical.

conversation, initiated by appellee, which terminated with a verbalized declination to go to the police station.[2]

Salinas was a fractured decision, but a majority of the Court clearly found no express invocation of rights. Salinas, in custody, stood mute, and intuiting invocation from the circumstances was not approved. However, the dissent, finding the circumstances sufficient to infer an invocation of the Fifth Amendment, emphasized "[p]olice … made clear that [Salinas] was a suspect" and "[h]is interrogation took place at the police station." Salinas, at 2189 (Breyer, J., dissenting). Here, again in stark contrast, appellee was not in custody. He did not stand mute. He was not told he was a suspect at all when he spoke to the detective — indeed, there was no known crime at this point, nor was that implied by police in any way. His refusal to meet with detectives occurred at the end of a voluntary telephone conversation, contact with police he initiated himself. Two factors emphasized by Justice Breyer were police-station interrogation and the declaration the person was a suspect — neither exists here. Even if Pennsylvania constitutional jurisprudence ignored the Salinas majority and aligned itself with the Salinas dissent, there was no invocation of rights in the present case.

---

[2] Further, the record does not contain any testimony at all that appellee's words indicated he was invoking any rights. The detective testified to what happened, but there was no detailing by either party of appellee's actual words. The detective said, "He said he refused to come in[,]" N.T. Trial, 12/14-20/06, at 481, and that was it. It seems unlikely that appellee's precise words were "I refuse to come in" — one surmises his refusal was a bit less stilted. But perhaps it is exactly those words that were used. Perhaps not. There are refusals, and there are refusals. The problem is that the examination of the detective was not aimed at evaluating whether there was an invocation of rights; therefore, the specific words were not sought from the witness. And now, based on a record where one can only speculate about appellee's actual words, to conclude those words were intended as such an invocation is just as speculative.

A fortiori, this was not just a pre-arrest scenario — this was a pre-discovery-there-was-even-a-crime scenario. Unlike the defendants in Salinas and Chmiel, appellee did not respond to interrogation that might incriminate him; there are no facts indicating police treated him as a suspect or suggested there was even a crime to be talked about. When he called, this was presented to appellee as a missing persons matter, nothing more. While appellee stated "it was on the street," there was no express or implied effort by police suggesting they wished to extract incriminating evidence from him. Appellee volunteered information over the phone, then declined to meet with the detective in person. This was neither "silence" nor the invocation of rights.[3]

This case simply does not include "silence in the face of police questioning" — it involves termination of a self-initiated monologue without police questioning, without arrest, without suggestion of suspect status, and really without silence. Even the lead opinion acknowledges "a defendant's silence in the face of police questioning is 'insolubly ambiguous' as it could be indicative of a busy schedule, a distrust of authority, an unwillingness to snitch, as much as it is indicative of guilt." Opinion Announcing Judgment of Court Slip Op., at 34. The action taken by the present appellee is certainly less ambiguous than silence, but even if equally ambiguous, the ambiguity precludes us from assuming — as a constitutional matter — that appellee declining the detective's invitation must necessarily constitute an invocation of his constitutional rights, rather than one of the myriad of other possible explanations.

---

[3] It is ironic that appellee's "silence" can be found in an articulated refusal to continue a conversation at the police station, while an articulated "invocation of rights" can be intuited from the exact same "silence." Also ironic is the suggestion that his "silence," such as it was, is so ambiguous that it cannot comprise substantive evidence, yet it is unambiguous enough to constitute an assertion of rights.

Finally, even if the right against self-incrimination were applicable to pre-arrest silence, much less pre-discovery-of-a-crime silence, and even if appellee had somehow properly invoked it, he still would not be entitled to relief, as he must show prejudice, which is not established by a prosecutor's mere mention of testimony already admitted at trial. See Commonwealth v. DiNicola, 866 A.2d 329, 336-37 (Pa. 2005) (citation omitted); Commonwealth v. Whitney, 708 A.2d 471, 478 (Pa. 1998) ("Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt." (citation omitted)).

Here, the prosecutor did nothing more than recapitulate testimony the lead opinion concedes was properly admitted. The absolute most that can be said is that the prosecutor asked the jurors to "[f]actor that in" when making their decision. N.T. Trial, 12/14-20/06, at 581. Indeed, this statement came after he enumerated the much more significant contradictions in appellee's statement — it is not clear that this isolated throwaway comment referred to the refusal to go to the station at all.

And while the single sentence at issue is assumed to have "emphasized" appellee's lack of cooperation with police, see Opinion Announcing Judgment of Court Slip Op., at 37, that is what a closing argument is — emphasizing the evidence in a persuasive manner. The really worthwhile evidence to be factored in was the contradictions preceding the termination of the phone call, which were spoken of in detail immediately before mention of the refusal. Which was to be "factored in"? Any emphasis is really a matter of speculation, given we are limited to a transcript that reveals no emphasis at all. The prosecutor certainly did not make this the crux of the argument, and even if it can be read to refer only to the refusal to go to the station, this comprised a

miniscule fraction of what was said. Reversal is appropriate only where the context of the statement is "likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt[,]" Whitney, at 478 (citation omitted), which cannot be found under these circumstances where any such argument was cut off by the prompt objection.

Accordingly, while the history of this line of cases as set forth by the lead opinion is intellectually appealing, it is inapplicable to the facts of this case. It is an expansive step to extend precepts from post-arrest cases to pre-arrest circumstances, much less pre-discovery-of-a-crime circumstances, and we certainly should not do so by means of a case where there was no silence, no invocation of rights, and no prosecutorial comment at all about silence or the meaning of testimony which the jury already heard without challenge.

The premise of any argument requires that the factual basis of the issue exists; merely saying so here begs the question. The testimony shows there was no silence. The record shows there was no invocation of rights, express or implied. Most importantly, the trial transcript shows beyond argument that the underlying premise of appellee's claim is not true: the prosecutor never said or implied to the jury that appellee's "silence" was substantive evidence or indicative of guilt.

Thus, as I would reverse the decision of the Superior Court and reinstate appellee's convictions and judgment of sentence, I respectfully dissent.