J-S16022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY CARTER | : | |
| | : | |
| Appellant | : | No. 1595 EDA 2023 |

Appeal from the PCRA Order Entered May 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014438-2011

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.*

MEMORANDUM BY LANE, J.:     **FILED JULY 15, 2024**

Larry Carter ("Carter") appeals from the order dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In June 2011, Carter shot Albert Young-El ("Young-El") in his back while he was riding his bicycle in a residential area of Philadelphia. As a result of his injuries, Young-El was transported to the hospital where he remained in critical condition. Nydira Price ("Price"), a resident of the neighborhood who knew Carter by the name "El-Train," witnessed the shooting and contacted police to report the incident. Police subsequently apprehended Carter and took him in for questioning. Carter told police that he did not know anything about the shooting. When asked to provide a formal statement, Carter refused, and was subsequently released. When Young-El was stable enough

_____

* Former Justice specially assigned to the Superior Court.

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

to speak with police, he informed them that El Train, whom he had known for years, shot him. Young-El additionally confirmed Carter's identity as the shooter by photo array. Several months later, police arrested Carter and charged him with criminal attempted murder, aggravated assault, and related offenses.

The matter proceeded to a bifurcated non-jury trial at which the Commonwealth presented the testimony of Young-El, who underwent seven surgeries and is paralyzed from the waist down as a result of the shooting. Young-El identified Carter in the courtroom and testified that he was the man who shot him in the back. *See* N.T., 11/26/13, at 10-13.

The Commonwealth also presented the testimony of Price, who had known Carter since 2010 and identified him in the courtroom. *See* N.T., 1/15/14, at 10, 26. Price testified that she saw Carter shoot Young-El while he was on his bike, and then walk away. *See id*. at 9-11. Price stated that when officers arrived at the scene, she heard Young-El emphatically tell the officers that "El Train did it. That f\*\*ken El Train did it." *Id*. at 31. On cross-examination by trial counsel, Price provided the following testimony:

> [Trial Counsel]: You never saw my client do anything violent, prior to that evening; correct?
>
> [Price]: Oh, yes.
>
> [Trial Counsel]: Okay. With a gun?
>
> [Price]: No.
>
> [Trial Counsel]: Never seen him with a gun?

[Price]: Not until the day of the shooting.

[Trial Counsel]: Okay.  Never saw him with a gun until the day of the shooting; understood.

*Id*. at 28-29.  On redirect by the prosecutor, Price testified as follows:

[Prosecutor]: Ma'am, what other violent things have you seen El Train do?

[Price]: Beat people up, sell drugs, this shooting.

[Prosecutor]: Another shooting?

[Price]: I said this shooting.

[Prosecutor]: Okay. Where did you see [him] sell drugs?

[Price]: In my neighborhood.

*Id*. at 36-37.  On re-cross-examination, trial counsel attempted to minimize

Price's testimony and elicited the following testimony from her:

[Trial Counsel]: Okay.  Despite the fact that you say you saw my client get into fights, you're 100 percent certain you said you never seen him with a gun; right?

[Price]: Not until the day of the shooting.

[Trial Counsel]: Just that one day now you see him with a gun on the day of the shooting?

[Price]: Yes.

[Trial Counsel]: Nothing prior to that; right?

[Price]: No.

*Id*. at 40.

The Commonwealth also presented the testimony of Detective Edward Keppol, who was one of the officers that initially questioned Carter regarding the shooting. On cross-examination, Detective Keppol provided the following testimony:

[Trial Counsel]: What was the next step in your investigation?

[Detective Keppol]: We were inside Central Detectives where the defendant in this case, . . . Carter, was brought in for investigation.

[Trial Counsel]: Did you speak with . . . Carter, at that time?

[Detective Keppol]: Spoke with him briefly, yes; asked if he knew anything about the shooting. He said he didn't know anything about it. He refused to give a formal statement.

[Trial Counsel]: So what was done with [Carter], at that time?

[Detective Keppol]: After we talked to him for a little while and we got no information from him, he was released.

*Id*. at 111-12.

At the conclusion of trial, the court convicted Carter of attempted murder, aggravated assault, and related offenses. On April 25, 2014, the trial court imposed an aggregate sentence of thirty and one-half to sixty-one years' incarceration. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on February 23, 2016. *See Commonwealth v. Carter*, 131 A.3d 103 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 132 A.3d 456 (Pa. 2016). Carter did not seek further review in the United States Supreme Court.

On July 8, 2016, Carter filed the instant, timely *pro se* PCRA petition.[2] The PCRA court appointed counsel, who filed an amended petition raising claims that trial counsel was ineffective for: (1) improperly eliciting inadmissible character evidence from Price; and (2) failing to object to Detective Keppol's testimony that Carter refused to provide a formal statement. On June 28, 2022, the PCRA court conducted an evidentiary hearing at which trial counsel testified. On May 18, 2023, the PCRA court entered an order dismissing Carter's petition. Carter filed a timely notice of appeal. The PCRA court did not require Carter to file a Pa.R.A.P. 1925(b) concise statement. In lieu of authoring a Rule 1925(a) opinion, the PCRA court referred this Court to its May 18, 2023 opinion.

Carter raises the following issues for our review:

1. Did the trial court err in dismissing [Carter's] PCRA petition after an evidentiary hearing when trial counsel was ineffective for eliciting unduly prejudicial and inadmissible character evidence by asking an alleged eye-witness to the crime in question whether or not she ever "saw my client do anything violent, prior to that evening" to which the witness responded "[o]h, yes" and then was allowed to elaborate on re-direct from the district attorney that she had previously seen [Carter]

_____

[2] Under the PCRA, a petition must be filed within one year after the judgment of sentence becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1). Carter's judgment of sentence became final on May 23, 2016, after the time in which he could have sought review in the United States Supreme Court expired. *See* U.S. Sup. Ct. R. 13 (stating appellant must file a petition for writ of *certiorari* with the United States Supreme Court within ninety days after entry of judgment by a state court of last resort). Thus, Carter had until May 23, 2017, to timely file a PCRA petition. Since the instant petition was filed on July 8, 2016, it is timely.

"beat people up, sell drugs, this shooting." [N.T.], 1/15/14, [at] 28, 36-37[.]

2. Did the trial court err in dismissing [Carter's] PCRA petition after an evidentiary hearing when trial counsel was ineffective for failing to object when . . . Detective Keppol, testified on direct examination that [Carter] "refused to give a formal statement" in violation of the Fifth Amendment of the United States Constitution and Article I[,] § 9 of the Pennsylvania Constitution. [N.T.], 1/15/14, [at] 112[.]

Carter's Brief at 2 (unnecessary capitalization omitted).

Our standard of review of an order dismissing a PCRA petition is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, to prove that counsel was ineffective, the petitioner must demonstrate:

- 6 -

(1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (some citations and quotation marks omitted). The failure to satisfy any one prong of the ineffectiveness test is fatal to a petitioner's claim. *See Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

In his first issue, Carter argues that trial counsel provided ineffective assistance when he elicited testimony from Price regarding Carter's prior instances of violence. The concern for error as it relates to the admissibility of witness testimony is minimized in a non-jury trial where the trial court, sitting as the trier of fact, "is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014); *see also Commonwealth v. Konias*, 136 A.3d 1014, 1022 (Pa. Super. 2016). Furthermore, in order to

constitute reversible error, an error in the admission of evidence must have contributed to the verdict. *See Konias*, 136 A.3d at 1022.

Carter explains that trial counsel asked Price on cross-examination, "[y]ou never saw [Carter] do anything violent, prior to that evening." Carter's Brief at 7 (quoting N.T., 1/15/14, at 28). Carter points to Price's response to that question, "[o]h, yes." *Id*. (quoting N.T., 1/15/14, at 28). Carter claims that Price's answer to trial counsel's question was inadmissible as character evidence, and was unfavorable, exceedingly prejudicial, and devoid of probative value. Carter further argues that trial counsel's error opened the door for the Commonwealth to question Price on redirect about the specific instances of violence that she had seen Carter engage in prior to the shooting in question. Carter claims that, as a result of counsel's error, the Commonwealth elicited Price's further testimony that she had seen Carter "beat people up, sell drugs, this shooting." *Id*. (quoting N.T., 1/15/14, at 36-37).

Carter characterizes trial counsel's question to Price as ill-advised and extremely risky, and maintains that he satisfied all three prongs of the test for ineffectiveness. First, Carter argues that his ineffectiveness claim has arguable merit since trial counsel sought to elicit improper character evidence, and in doing so, only brought in additional evidence against his own client's character. Second, Carter contends that trial counsel lacked a reasonable strategic basis to ask the question because counsel was aware of Carter's previous conviction for simple assault, and counsel had no reason to believe

that Price's answer would be favorable. Finally, Carter maintains that he was prejudiced since trial counsel's question resulted in the fact-finder hearing testimony that Carter had engaged in other acts of violence, including beating people up, and selling drugs, during a trial in which he was accused of shooting someone over a drug debt.

The PCRA court considered Carter's first ineffectiveness claim and determined that he failed to satisfy the arguable merit prong of the performance and prejudice test. *See* PCRA Court Opinion, 5/18/23, at 11. In so ruling, the court noted that the character evidence elicited from Price was "inadmissible," "irrelevant," and "unduly prejudicial." *Id*. The court additionally noted that the inadmissible character evidence "did not singularly persuade this court." *Id*.

As explained above, when reviewing a ruling on an ineffectiveness claim, this Court need not analyze the three prongs of the performance and prejudice test in any particular order. *See Johnson*, 139 A.3d at 1272. Instead, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. *Id*. Moreover, this Court may affirm a PCRA court's decision on any grounds if the record supports it. *Id*. Thus, although the trial court determined that Carter failed to satisfy the first prong of the performance and prejudice test, we choose instead to consider whether Carter satisfied the third prong of the test—which required him to prove that he suffered prejudice as a result of trial counsel's error.

Here, the PCRA court judge was the same judge that presided over Carter's non-jury trial. As such, when presiding over Carter's non-jury trial, the judge sat both as fact-finder and as gatekeeper for the admission and exclusion of evidence. *See Commonwealth v. Dent*, 837 A.2d 571, 582 (Pa. Super. 2003) (holding "[i]t is of the essence of the judicial function to hear or view proffered evidence, whether testimonial or in exhibit form, and to decide whether or not it should be admitted into evidence, or if admitted initially or provisionally, should later be excluded or disregarded"). In its opinion, the PCRA court determined that the testimony elicited from Price was "inadmissible," "irrelevant," and "unduly prejudicial." *See* PCRA Court Opinion, 5/18/23, at 11. As this was a non-jury trial, the trial court judge was presumed to know the law regarding the admissibility of Price's comments, presumed to disregard any of Price's comments which constituted inadmissible character evidence, and presumed to ignore Price's comments to the extent that they were inadmissible or unduly prejudicial. *See Smith*, 97 A.3d at 788; *see also Konias*, 136 A.3d at 1022. Accordingly, as these presumptions preclude Carter from establishing that trial counsel's question resulted in the admission of evidence which contributed to the verdict, it follows that Carter cannot establish that there is a reasonable probability that the outcome of the proceedings would have been different but for trial counsel's question. *See Johnson*, 139 A.3d at 1272.

Moreover, given that the Commonwealth presented the testimony of two eyewitnesses to the shooting, both of whom had known Carter for years and

one of whom was the victim, Carter has failed to convince this Court that there is a reasonable probability that the outcome of the trial would have been different but for trial counsel's question. **See id**. Thus, as the PCRA court's determination that Carter cannot satisfy all three prongs of the performance and prejudice test is supported by evidence of record and is free of legal error, we conclude that Carter's first issue merits no relief.

In his second issue, Carter argues that trial counsel was ineffective for failing to object or seek curative measures when Detective Keppol referenced Carter's refusal to provide a formal statement to police. Where the defendant does not testify at trial, the Fifth Amendment precludes the government from using a defendant's post-arrest silence as substantive evidence of consciousness of guilt. **See Commonwealth v. DiNicola**, 866 A.2d 329, 335 (Pa. 2005). However, mere reference to a defendant's silence does not necessarily impinge constitutional rights when guilt is not implied. **See Commonwealth v. Adams**, 104 A.3d 511, 517 (Pa. 2014). As our Supreme Court has explained:

> While we have interpreted the constitutional right against self-incrimination generally to prohibit prosecutors from referencing a defendant's silence as substantive evidence of guilt, this Court has also concluded that the right against self-incrimination is not burdened when the reference to silence is circumspect and does not create an inference of an admission of guilt. . . . [E]ven an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt.

*Id*. (citations and quotation marks omitted) (considering a detective's trial testimony that defendant "had nothing to say" when interviewed by law enforcement and concluding that such testimony did not unconstitutionally burden defendant's right against self-incrimination because the reference was contextual, brief, and did not highlight defendant's silence as evidence of guilt). The mere revelation of silence does not establish innate prejudice for ineffectiveness purposes and, instead, the reference to the defendant's silence must be weighed against the strength of the evidence. *See DiNicola*, 866 A.2d at 335; *see also Commonwealth v. Whitney*, 708 A.2d 471, 478 (Pa. 1998) (holding that defendant failed to show prejudice from counsel's failure to object to a reference to defendant's pre-arrest silence "in light of the testimony of . . . two living witnesses and the officers themselves, and the evidence of the deceased victim's blood on appellant and the victims' stolen items on appellant's person").

Carter claims that Detective Keppol's statement, that Carter "refused to give a formal statement," improperly highlighted the invocation of his right to remain silent, thereby violating the Fifth Amendment of the U.S. Constitution, and Article I, § 9, of the Pennsylvania Constitution. Carter's Brief at 9 (quoting N.T., 1/15/14, at 112). Carter asserts that trial counsel was ineffective for failing to object to this testimony or seek any curative measures following the detective's statement. According to Carter, trial counsel had no reasonable strategy for failing to object to this statement, and he suffered prejudice as a result of counsel's failure.

The PCRA court considered Carter's second ineffectiveness claim and determined that it lacked merit. Although the PCRA court determined that Carter's claim had arguable merit and that trial counsel had no reasonable basis not to object to the detective's testimony, the court nevertheless concluded that Carter failed to satisfy the prejudice prong of the ineffectiveness test. *See* PCRA Court Opinion, 5/18/23, at 12. Specifically, the court determined that Carter was unable to show that he suffered prejudice due to the detective's comment because "there was eyewitness evidence of his criminal acts for the incident in question." *Id*.

Based on our review, we conclude that the PCRA court's determination is supported by evidence of record and is free of legal error. Initially, we conclude that Carter failed to meet the first prong of the performance and prejudice test by demonstrating that his claim had arguable merit. The detective's reference to Carter's "silence" was made in the context of the detective's explanation that he "[s]poke with [Carter] briefly, . . asked [him] if he knew anything about the shooting[, h]e said he didn't know anything about it[, and h]e refused to give a formal statement." N.T., 1/15/14, at 111-12. Given that Carter told law enforcement that he did not know anything about the shooting, the detective's testimony regarding Carter's refusal to give a formal statement occurred in a context not likely to suggest to the fact-finder that Carter's silence was the equivalent of a tacit admission of guilt. *See Adams*, 104 A.3d at 517. Rather, the reference to Carter's refusal to provide a formal statement was contextual, brief, and suggested that the

reason for his silence was his lack of any knowledge regarding the shooting. *Id*. at 518. Notably, trial counsel came to this same conclusion when considering whether to object to the detective's testimony. During the evidentiary hearing conducted in this matter, trial counsel explained that he decided not to object to the detective's testimony because he believed that the testimony was "probably admissible," since the detective was "simply clarifying [that Carter] gave an oral statement, but he didn't give a written statement." N.T., 6/28/22, at 27. Thus, we conclude that Carter's second ineffectiveness claim lacked arguable merit because the detective's testimony did not unconstitutionally burden Carter's right against self-incrimination.

Moreover, the record supports the PCRA court's determination that Carter failed to satisfy the third prong of the performance and prejudice test in relation to his second ineffectiveness claim. Given that the Commonwealth presented the testimony of two eyewitnesses to the shooting, both of whom had known Carter for years and one of whom was the victim, Carter has failed to convince this Court that there is a reasonable probability that the outcome of the trial would have been different but for trial counsel's failure to object to the detective's statement. Thus, we conclude that Carter cannot establish that he suffered prejudice as a result of counsel's failure to object to the detective's statement.

In sum, as the record supports the PCRA court's determination that Carter failed to satisfy all three prongs of the performance and prejudice test

for either of his ineffectiveness claims, we affirm the order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2024